Earl TOTTENHAM, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 01–07–00389–CR, 01–07–00390–CR.

Court of Appeals of Texas, Houston (1st Dist.).

Jan. 29, 2009.

Discretionary Review Refused July 1, 2009.

Keisha L. Smith, Houston, TX, for Appellant.

B. Warren Goodson Jr., Asst. Crim. Dist. Atty., Kurt Sistrunk, Crim. Dist. Atty., Galveston County, Galveston, TX, for Appellee.

Panel consists of Justices TAFT, BLAND, and SHARP.

## OPINION

TIM TAFT, Justice.

Appellant, Earl Tottenham, was charged with three offenses of tampering with a governmental record [1] in trial court cause numbers 06CR1462, 06CR1463, and 06CR1464. After a jury trial on all three causes, appellant was convicted of the charges in cause numbers 06CR1463 and 06CR1464.[2] The jury assessed punishment at four years in prison for each cause, but recommended that the sentences be suspended; the trial court did so and placed appellant on community supervision for four years in each cause. Appellant appeals his convictions in cause numbers 06CR1463 and 06CR1464.[3] We determine whether: (1) the evidence was legally and factually sufficient to support

---

1. *See* TEX. PENAL CODE ANN. § 37.10(a)(2), (c)(2) (Vernon Supp.2008).

2. The trial court granted a directed verdict of not guilty as to the count in trial cause number 06CR1462.

3. Appellate court cause numbers 01–07–00389–CR and 01–07–00390–CR, respectively.

the convictions; (2) the trial court erred in not giving a particular jury instruction and, if so, whether such error resulted in egregious harm; (3) the sentence imposed was void; and (4) whether the assistance of trial counsel was rendered ineffective by counsel's failure to object to the court's charge. We affirm appellant's convictions and sentences in both causes.

## Facts

Appellant was elected constable for Precinct 3 of Galveston County in November 1992 and was reelected three times—the last time being in November 2004. As a law enforcement officer, appellant was required to be a commissioned peace officer. Appellant failed to maintain the training required by the Texas Commission of Law Enforcement Education and Standards (T.C.L.E.O.S.E.) and, consequently, his license as a peace officer expired on August 31, 2001. In May 2002, T.C.L.E.O.S.E. sent appellant a notice that his license had expired and that T.C.L.E.O.S.E. considered appellant to be terminated from the Precinct 3 Constable's office. In October 2004, an audit of the Galveston County Precinct 3 Constable's office was conducted and it was discovered that appellant's peace officer's license had expired in August 2001. The investigator contacted appellant by phone on October 26, 2004, and told him of this finding. Appellant told the investigator that he had completed all his required training by attending classes at the Galveston County Sheriff's Training Academy and would take the test to reinstate his license. Neither the Galveston County Judge nor Galveston County's legal department was then aware of the lapse of appellant's peace officer's license.

A second audit was conducted in May 2005[4] by the same investigator and among the items mentioned in the report following the audit was that the violations found in the 2004 audit still existed. The 2005 audit report specifically mentioned appellant's expired peace officer's license and the "extraordinary liability issues [that presented] for the officers" that had been mentioned in the prior audit. The investigator noted appellant's prior statements that he would be getting his endorsement and retaking the test, which implied that appellant had completed the mandatory training required. After reviewing records in Austin, the investigator determined that appellant had not completed the training courses required before an endorsement could issue and had taken no action except to request an application to retest. The investigator specifically noted that appellant needed to complete "Identity Theft, Special Investigative Topics, Asset Forfeiture, and Racial Profiling" courses and complete a minimum of 80 training hours between September 1, 2001 and August 31, 2005.

In June 2005, the director of the Credentialing and Enforcement Division of T.C.L.E.O.S.E. sent a letter to appellant, providing him a copy of the 2005 audit report, warning him that it was important that he take corrective action without delay, and requesting that he advise T.C.L.E.O.S.E., in writing, of the corrective action taken, no later than July 10, 2005. A copy was sent to James Yarbrough, Galveston County Judge.

The letter from T.C.L.E.O.S.E. was the first notice that Judge Yarbrough received indicating a problem with appellant's licensing status. Until that time, Yarbrough had been satisfied with appellant's

4. The second audit was instigated by complaints which ultimately resulted in the indictment in cause number 06CR1462. The rec-

ord does not reveal the reason the first audit was conducted.

job performance. After receiving the letter, Yarbrough was concerned about liability issues that might arise from a constable who was not properly licensed. Yarbrough sent a letter to appellant in early July 2005, noting that appellant's license expired in August 2001 and reminding appellant that a person elected as a constable was required to become licensed by T.C.L.E.O.S.E. within 270 days of taking office. In the letter, the judge also noted that appellant had begun a new term the prior January and therefore had 270 days from the day he took office to complete the training and obtain his peace officer's license. Yarbrough warned appellant that, if he was not successful in obtaining his license within the prescribed time, appellant would be subject to removal from office. He reminded appellant that failure to adhere to licensing requirements increased the exposure of the county and appellant to liability for any misdeeds that might occur, and requested appellant to advise him when appellant resolved the issues identified by the audit.

Shortly after the letter was sent, appellant contacted Yarbrough and told him that "there were mistakes" and that appellant had documentation to prove that he had taken the required courses. Appellant indicated that there were clerical errors in the system that he was working to resolve and added that "they were out to get him." Appellant informed the judge that he had certificates of completion for courses referenced in the audits, and the judge asked appellant to provide the certificates to Harvey Bazaman, the head of the County Legal Department, so that Yarbrough

could see them. Bazaman was to act as Yarbrough's agent for the receipt of the certificates. This arrangement was later confirmed in a telephone conversation between all three men.

Appellant provided three documents to Bazaman, two of which appeared to be certificates of completion for two four-hour courses taken at the Galveston County Sheriff's Academy in cultural diversity on March 17, 2003 and identity theft on July 24, 2003. The third document was a training enrollment form for the Galveston County Sheriff's Academy, dated February 10, 2002, for enrollment in courses in intermediate child abuse on April 3, 2002, criminal investigation on September 15, 2002, and intermediate use of force on March 26, 2002. Appellant requested Bazaman to deliver the certificates directly to Yarbrough and Bazaman did so. Yarbrough accepted the certificates in good faith and did not check on their authenticity.

Later review of the proffered certificates by Lieutenant Betty Frey, the training division commander for the Galveston County Sheriff's Office, revealed that, although the certificates were the type of certificates issued by the Galveston County Sheriff's Academy at that time,[5] the fonts in which appellant's name and the date the course was completed were typed were not ones utilized by the academy at the time the certificates were dated.[6] The certificates appeared to be legitimate certificates except for the name and dates which appeared to be typed manually, as was done before the academy began using computers in the mid–1990s.[7] Frey determined

---

5. At trial, Frey testified that certificates of completion issued by the Galveston County Sheriff's Academy were governmental records.

6. At the time of trial, the State introduced two certificates that were actually issued by the Galveston County Sheriff's Academy in 2002

and 2003 for comparison with the ones presented by appellant in response to Yarbrough's letter.

7. At trial, the defense introduced several certificates issued by the academy in 1996 that contained a similar font to that of the certifi-

that the courses listed on the two purported certificates were not offered on the dates stated on the certificates, and one was not offered by the department until the year following that listed on the certificate. The dates for the classes listed on the enrollment form also did not correspond to actual dates when the courses were offered. Records from the academy and T.C.L.E.O.S.E. confirmed that appellant had not taken any courses at the Galveston County Sheriff's Academy after 1998.[8] The dates listed for the courses were additionally suspect because, starting in 2002, and continuing for several years, the Galveston County Sheriff's Academy was only permitting Galveston County Sheriff's deputies to enroll in their classes. Appellant would therefore not have been permitted to enroll in courses at the academy during 2002 or 2003. Although her signature appeared on the certificates, Frey denied issuing either certificate to appellant on the dates in question, for the courses in question. She also did not recall any request by appellant after July 7, 2005, to provide him with any certificates of completion, and denied sending the certificates in question to appellant after that date.

In early July 2005, the Galveston County District Attorney asked his chief investigator, Ralph Mutchler, to investigate whether appellant had completed law enforcement training. Mutchler spoke to appellant on two occasions—July 21, 2005, and July 27, 2005—recording the first conversation.[9] Appellant told Mutchler that he had been in contact with Betty Frey,

that her records were incomplete, and that he had obtained training from the Sheriff's office that would demonstrate that his license should not have been suspended. Mutchler suggested that appellant provide him with training certificates and told appellant that he would work with the Sheriff's department to determine if there had been a mistake. Appellant also told Mutchler that he had not received any notice from T.C.L.E.O.S.E. that he was lacking any course work until he received a letter stating that his license had been suspended, and informed Mutchler that he had taken several courses in 2004, 2005, and at the Galveston County Sheriff's Academy after 2001. On July 27, 2005, appellant provided Mutchler a training enrollment form identical to that provided to Judge Yarbrough and some original training certificates.[10]

On October 28, 2005, appellant took his licensing examination with T.C.L.E.O.S.E. and failed. The county judge, who had been checking with T.C.L.E.O.S.E. on appellant's progress in receiving his license within the permitted 270–day period, was notified of this fact and subsequently sent a letter to appellant asking him to resign by November 4, 2005, or else legal action to remove him would be commenced. Appellant resigned shortly thereafter. Judge Yarbrough later opined that appellant had supplied him with the certificates in an attempt to convince the judge that appellant was in good standing with T.C.L.E.O.S.E. and that, if the certificates were not legitimate, appellant had been

cates in question at trial, which were dated 2003.

8. At trial, records from T.C.L.E.O.S.E. detailing courses completed by appellant were introduced into evidence.

9. The recording of this conversation was played to the jury at trial.

10. At trial, appellant introduced training certificates for five training courses that he completed at the Texas City Law Enforcement Training Academy in 1995, 2004 and 2005.

trying to deceive him.[11]

Appellant was indicted for three offenses of tampering with governmental records. The indictments for the two charges that are the subject of this appeal both read as follows:

In the name and by the authority of the State of Texas, the GRAND JURORS for the county of Galveston, State aforesaid, duly organized as such at the JANUARY term, A.D., 2006, of the District Court of said County, 405th Judicial District of Texas, upon their oaths in said Court present that Earl Tottenham, on or about the 11th day of July A.D., 2005, and anterior to the presentation of this indictment in the County of Galveston and State of Texas, did then and there, with intent to defraud or harm another, namely James Yarbrough, intentionally or knowingly present a document, to-wit: a course completion certificate issued by Galveston County Sheriff's Academy, Galveston County, Texas, altering the name and date on the certificate, with knowledge of its falsity and with intent that it be taken as a genuine governmental record, against the peace and dignity of the State.

**Sufficiency Challenges**

In appellant's first point of error, he contends that the evidence is legally and factually insufficient to support the convictions. Appellant advances three chal-

lenges to the sufficiency of the evidence, arguing that the evidence does not establish that: (1) he altered the certificates; (2) he presented the documents with knowledge of their falsity; and (3) he had the intent to defraud or harm Yarbrough. Appellant also asserts that the State cannot rely on the presumption of Texas Penal Code section 37.10(g) [12] to establish the element of intent to defraud or harm because the evidence at trial did not establish that the documents in question were governmental records.[13]

**A. Standard of Review**

In assessing legal sufficiency, this Court must consider the entire trial record to determine whether, viewing the evidence in the light most favorable to the verdict, a rational jury could have found beyond a reasonable doubt that the accused committed all essential elements of the offense. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Burden v. State*, 55 S.W.3d 608, 612 (Tex. Crim.App.2001). We must "evaluate all of the evidence in the record, both direct and circumstantial, whether admissible or inadmissible." *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex.Crim.App.1999). In conducting a legal-sufficiency review, we do not reevaluate the weight and credibility of the evidence, but ensure only that the jury reached a rational decision. *Muniz v. State*, 851 S.W.2d 238, 246 (Tex.Crim.App. 1993). It is the function of the trier of fact

---

**11.** Yarbrough acknowledged that no actual harm had come to him personally, nor had the county been sued because of appellant.

At trial, the only testimony offered by the defense at the guilt-innocence phase related to the charge in cause number 06CR1462 for which the judge granted a directed verdict. Neither party cites to, or relies on, such testimony. For clarity's sake, we do not detail in our opinion either the State's or appellant's evidence regarding the charge for which appellant was acquitted.

**12.** TEX PENAL CODE ANN 37.10(g) (Vernon Supp.2008) (establishing presumption of intent to defraud or harm another if person acts with respect to two or more of same type of governmental records or blank governmental record forms and such record or blank form is license, certificate, permit, seal title, or similar document issued by government).

**13.** The trial court gave an instruction to the jury on this presumption in the court's charge at guilt-innocence. Appellant did not object to the inclusion of this instruction.

to resolve any conflict of fact, to weigh any evidence, and to evaluate the credibility of any witnesses. *See Dewberry,* 4 S.W.3d at 740; *Adelman v. State,* 828 S.W.2d 418, 421 (Tex.Crim.App.1992); *see also Matson v. State,* 819 S.W.2d 839, 843 (Tex.Crim. App.1991) (quoting *Moreno v. State,* 755 S.W.2d 866, 867 (Tex.Crim.App.1988)). We, therefore, resolve any inconsistencies in the evidence in favor of the verdict, *Matson,* 819 S.W.2d at 843, and "defer to the jury's credibility and weight determinations." *Marshall v. State,* 210 S.W.3d 618, 625 (Tex.Crim.App.2006).

When conducting a factual-sufficiency review, we view all of the evidence in a neutral light. *Cain v. State,* 958 S.W.2d 404, 408 (Tex.Crim.App.1997). We will set the verdict aside only if (1) the evidence is so weak that the verdict is clearly wrong and manifestly unjust or (2) the verdict is against the great weight and preponderance of the evidence. *Johnson v. State,* 23 S.W.3d 1, 11 (Tex.Crim.App.2000). Under the first prong of *Johnson,* we cannot conclude that a conviction is "clearly wrong" or "manifestly unjust" simply because, on the quantum of evidence admitted, we would have voted to acquit had we been on the jury. *See Watson v. State,* 204 S.W.3d 404, 417 (Tex.Crim.App.2006). Under the second prong of *Johnson,* we cannot declare that a conflict in the evidence justifies a new trial simply because we disagree with the jury's resolution of that conflict. *Id.* Before concluding that evidence is factually insufficient to support a verdict under the second prong of *Johnson,* we must be able to say, with some objective basis in the record, that the great weight and preponderance of the evidence contradicts the jury's verdict. *Id.*

In conducting a factual-sufficiency review, we must be cognizant of the fact that a jury has already passed on the facts and avoid substituting our judgment for that of the jury. *Lancon v. State,* 253 S.W.3d 699, 704–05 (Tex.Crim.App.2008). The jury is the sole judge of the credibility of the witnesses, and the weight to be given their testimony, and may choose to believe all, some, or none of the testimony presented. *Id.* at 707. We therefore afford almost complete deference to a jury's determination when that decision is based on an evaluation of credibility. *Id.* at 705. In conducting a factual-sufficiency review, we also must discuss the evidence that, according to the appellant, most undermines the jury's verdict. *Sims v. State,* 99 S.W.3d 600, 603 (Tex.Crim.App.2003). We may not find the evidence factually insufficient simply because we disagree with the verdict, but only because the verdict represents a manifest injustice. *Watson,* 204 S.W.3d at 414.

█ Under state law, in determining both the legal and the factual sufficiency of the evidence, we measure the evidentiary sufficiency by the elements of the offense as defined by the hypothetically correct jury charge for the case. *See Vega v. State,* 267 S.W.3d 912, 915 (Tex.Crim.App. 2008) (citing *Wooley v. State,* 273 S.W.3d 260, 261, 266–67 (Tex.Crim.App.2008)) (factual sufficiency); *Malik v. State,* 953 S.W.2d 234, 239–40 (Tex.Crim.App.1997) (legal sufficiency). A hypothetically correct jury charge "sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Malik,* 953 S.W.2d at 240. This standard ensures that a judgment of acquittal, or a reversal for a new trial in the case of factual insufficiency, is "reserved for those situations where there is an actual failure in the State's proof of the crime rather than a mere error in the jury charge submitted." *See id.; Wooley,*

273 S.W.3d at 267–68 (holding that remedy of new trial "sweeps too broadly" and is "inappropriate remedy" to be granted because defendant received windfall in jury instruction).

## B. Discussion

The elements for tampering with a governmental record under penal code section 37.10(a)(2) [14] are that (1) a person (2) makes, presents, or uses (3) any record, document, or thing (4) with knowledge of its falsity and (5) with intent that it be taken as a genuine governmental record. TEX. PENAL CODE ANN. § 37.10(a)(2) (Vernon Supp.2008). When the State seeks to charge a person with a second-degree felony offense of tampering with a governmental record, it must additionally prove that the accused committed the offense "with the intent to defraud or harm another" and that the governmental record was of a particular type. TEX. PENAL CODE ANN. §§ 37.10(c)(1), (2) (Vernon Supp.2008).

■ Appellant's first contention is that the evidence is legally and factually insufficient to prove that he altered the names and dates on the certificates. Appellant relies on the following language in the charging paragraphs

> Now if you find from the evidence beyond a reasonable doubt that … [appellant] did then and there, with intent

to defraud or harm another, namely James Yarbrough, present a document, to-wit: A course completion certificate issued by Galveston County Sheriff's Academy, Galveston County, Texas, *altering the name and date on the certificate*, with knowledge of its falsity and with intent that it be taken as a genuine government record then you will find the defendant guilty of tampering with a governmental record as charged in the Indictment.

(Emphasis added).

Appellant argues that the phrase "altering the name and date on the certificate," contained in both the indictment and the jury charge, imposed a requirement on the State to prove beyond a reasonable doubt that appellant altered the name and date on the certificates before appellant could be convicted of tampering with a governmental record. Appellant asserts that without evidence that appellant altered the two certificates, the State failed to sufficiently establish all the elements of the crime as charged in the indictment.

The statutory elements of tampering with a governmental record under penal code section 37.10(a)(2) do not include "altering" the document in question, but rather, an offense is committed if a person "makes, presents, or uses" a false record.[15] *See* TEX. PENAL CODE ANN. § 37.10(a)(2).

---

**14.** TEX PENAL CODE ANN § 37.10(a)(2) (Vernon Supp.2008).

**15.** Appellant does not argue that we should apply the state law evidentiary sufficiency standard; he asserts only claims of insufficiency under federal constitutional standards. *See Fuller v. State*, 73 S.W.3d 250, 252 (Tex. Crim.App.2002) ("*Malik's* evidentiary sufficiency standard [is] a purely state law standard that is 'foreign to federal constitutional norms' … [and so] does not apply to [federal constitutional] evidentiary sufficiency claims."). Nevertheless, we note that a hypothetically correct jury charge for a felony of-

fense of tampering with governmental record would not include the phrase "altering the name and date on the certificate" as such phrase is not a statutory element of the offense charged or an "integral part of an essential element of the offense." *See* TEX PENAL CODE ANN. § 37.10(a)(2); *Gharbi v. State*, 131 S.W.3d 481, 482–83 (Tex.Crim.App.2003). The evidence therefore would likewise have been sufficient under the corollary state evidentiary sufficiency standard. *Gharbi*, 131 S.W.3d at 483; *Fuller*, 73 S.W.3d at 252–56 (Tex.Crim.App.2002); *Gollihar v. State*, 46 S.W.3d 243, 255–57 (Tex.Crim.App.2001).

The phrase "altering the name and date on the certificate" serves to further describe the certificates, but is not a statutory element of the offense charged. *See* TEX. PENAL CODE ANN. § 37.10(a)(2); *Fuller v. State,* 73 S.W.3d 250, 252 (Tex.Crim.App. 2002) (federal constitutional law measures evidentiary sufficiency against "elements of the offense as defined by state law"). Here, the evidence is sufficient that appellant "presented" certificates with altered names and dates. We overrule this sufficiency contention.

 Appellant also contends that the evidence is legally and factually insufficient to prove that he presented the documents with knowledge of their falsity or had the intent to defraud or harm Yarbrough. Appellant acknowledges that intent may be inferred from circumstantial evidence such as the acts, words, and conduct of the accused. *See Wolfe v. State,* 917 S.W.2d 270, 275 (Tex.Crim.App.1996). He argues, however, that the record demonstrates that he was well thought-of, considered an honest individual, and his actions in delivering the certificates were indicative of a person attempting to comply with the requirements of T.C.L.E.O.S.E. and who was unaware that the documents were inaccurate, rather than a person with the intent to defraud or harm. He also argues that the record fails to establish that he knew that the certificates were false.

There was no direct evidence presented at trial regarding appellant's intent or his knowledge regarding the falsity of the certificates. Appellant did not testify at the guilt-innocence phase, and the State introduced no statements attributed to appellant that directly proved appellant's intent to defraud or harm or knowledge of the falsity of the certificates. However, both intent and knowledge may be inferred from circumstantial evidence and proof of a culpable mental state almost invariably depends on circumstantial evidence. *Dillon v. State,* 574 S.W.2d 92, 94 (Tex.Crim. App.1978). We therefore consider the circumstantial evidence introduced at trial.

The evidence at trial demonstrated that the documents were patently false. Frey testified that the certificates appeared to be legitimate certificates, altered to indicate the completion of courses, which appellant did not attend on the dates named, which were not conducted on the dates named, and in which, if the courses had been offered on those dates, appellant could not have been enrolled because enrollment in those courses was not offered at that time to law enforcement personnel outside of Galveston County Sheriff's deputies. The circumstances under which the certificates were produced—following two audits by T.C.L.E.O.S.E. and under the threat of removal from office if proof of completion of required courses was not provided—and the many statements made by appellant to various individuals indicating that appellant had completed these courses at the Galveston County Sheriff's Academy provide circumstantial evidence that appellant was aware of the falsity of the certificates and sought to defraud Yarbrough in an attempt to retain his position. Appellant suggested at trial that if appellant had the intent to defraud, he would have altered the certificates to allege courses actually conducted on the dates listed, and further suggested that he innocently passed on certificates provided to him by Frey that he did not know were false. However, Frey denied sending the falsified certificates to appellant and denied issuing the certificates with the name and dates presented.

It was within the province of the jury to weigh the evidence presented, evaluate the credibility of the witnesses and accept or reject the theories presented to it, and we

must defer to the jury's credibility and weight determinations. *Marshall*, 210 S.W.3d at 625; *Lancon*, 253 S.W.3d at 707. Under the record presented on appeal, viewing the evidence in the light most favorable to the verdicts, a reasonable jury could have found beyond a reasonable doubt that the elements of knowledge and intent were shown. Likewise, reviewing the evidence in a neutral light, we hold that the evidence establishing knowledge and intent is not so weak as to render the verdicts wrong or manifestly unjust, nor are the verdicts against the great weight and preponderance of the evidence.[16] Accordingly, the evidence was legally and factually sufficient to support the convictions.

Appellant also asserts that the State could not rely on the presumption of Texas Penal Code section 37.10(g), upon which the trial court instructed the jury at trial, which provides that a person is presumed to intend to defraud or harm another if the person acts with respect to two or more of the same type of governmental records or blank governmental record forms and such record or blank form is a license, certificate, permit, seal title, or similar document issued by government. Tex. Penal Code Ann. § 37.10(g) (Vernon Supp.2008). Appellant argues that the evidence at trial did not demonstrate that he acted with respect to two or more of the same type of governmental records, opining that the evidence only showed that he acted in reference to documents purporting to be governmental records, not actual governmental records.

As noted, the evidence amply supported the issue of intent to defraud or harm, even without the application of any presumption. We therefore need not determine whether this presumption in the charge—which was not objected to by appellant and whose presence in the charge is not challenged on appeal—applied in this case.[17]

We hold that a reasonable jury could have found the essential elements of the offense beyond a reasonable doubt and that the jury was rationally justified in finding guilt beyond a reasonable doubt. The evidence was legally and factually sufficient to support appellant's convictions, and we therefore overrule appellant's first point of error.

## Jury Charge

■ In appellant's second point of error, he asserts that the trial court committed egregious error by not giving a jury in-

---

**16.** Appellant tendered no evidence at trial on the issue of his knowledge or intent. He argues on appeal that the record lacks sufficient evidence that he intended to harm or defraud Yarbrough or knew that the certificates were false. He cites evidence that the people who worked with him, including Yarbrough, had previously thought highly of him and found him to be an honest individual. He suggests that he was simply trying to comply with T.C.L.E.O.S.E. requirements and presented the certificates without being aware that they were "inaccurate." Appellant also argues that the community and county were not harmed by his deficiencies and therefore there was no evidence that appellant intended to harm or defraud.

**17.** Moreover, appellant's challenge to the application of this presumption rests on the same basis as his challenge to his sentence which we discuss later in this opinion—namely, that the use of the term "governmental record" excludes the applicability of this presumption to charges under penal code section 37.10(a)(2) because the documents he provided were not governmental records issued by government. As noted in our discussion of that issue, we reject such an application of the term "governmental record." Moreover, testimony from Frey that the certificates appeared legitimate, except for the name and date, would support a jury finding that the documents were governmental records, albeit falsified ones.

struction on the law of presumptions pursuant to section 2.05(a)(2) of the Texas Penal Code.[18] The State urges us to not review this point because appellant affirmatively stated that he had no objections to the charge. The State relies on a line of authorities from this Court holding that an appellant relinquishes his right to appellate review of a charge which he affirmatively endorsed. *See White v. State,* 59 S.W.3d 368, 371 (Tex.App.-Houston [1st Dist.] 2001, pet. ref'd); *Coleman v. State,* 45 S.W.3d 175, 182 (Tex.App.-Houston [1st Dist.] 2001, pet. ref'd), *overruled on other grounds, Johnson v. State,* 95 S.W.3d 568 (Tex.App.-Houston [1st Dist.] 2002, no pet.); *Ly v. State,* 943 S.W.2d 218, 220–21 (Tex.App.-Houston [1st Dist.] 1997, pet. ref'd); and *Reyes v. State,* 934 S.W.2d 819, 820 (Tex.App.-Houston [1st Dist.] 1996, pet. ref'd). However, this line of authorities was overruled *sub silentio* by *Bluitt v. State,* in which the Court of Criminal Appeals held that an affirmative denial of objection to the court's charge shall be deemed equivalent to a failure to object to the charge and reviewed on appeal as unobjected-to charge error. 137 S.W.3d 51, 53 (Tex.Crim.App.2004). We will therefore review this point.

■■ In analyzing a jury-charge issue, our first duty is to decide if error exists. *Middleton v. State,* 125 S.W.3d 450, 453 (Tex.Crim.App.2003). Only if we find error do we then consider whether an objection to the charge was made and analyze for harm. *Id.; see also Warner v. State,* 245 S.W.3d 458, 461 (Tex.Crim.App.2008) ("The failure to preserve jury-charge error is not a bar to appellate review, but rather it establishes the degree of harm necessary for reversal."). If jury-charge error exists to which no objection was lodged, we may not reverse on account of such error unless the error was so egregious and created such harm that appellant was denied a fair trial. *Id.; Almanza v. State,* 686 S.W.2d 157, 171 (Tex.Crim.App.1984). In order to determine egregious harm, we examine "the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Almanza,* 686 S.W.2d at 171. "The appellant must have suffered actual, rather than theoretical, harm." *Warner,* 245 S.W.3d at 461.

■ Appellant argues that, because the trial court gave the jury an instruction on a presumed fact under penal code section 37.10(g), the court was required to also give the jury an instruction under penal code section 2.05(a)(2). Appellant asserts that the failure to do so resulted in the

---

18. This section reads:
(a) except as provided by Subsection (b), when this code or another penal law establishes a presumption with respect to any fact, it has the following consequences:
. . .
(2) if the existence of the presumed fact is submitted to the jury, the court shall charge the jury, in terms of the presumption and the specific element to which it applies, as follows:
(A) that the facts giving rise to the presumption must be proven beyond a reasonable doubt;
(B) that if such facts are proven beyond a reasonable doubt the jury may find that the element of the offense sought to be presumed exists, but it is not bound to so find;
(C) that even though the jury may find the existence of such element, the state must prove beyond a reasonable doubt each of the other elements of the offense charged; and
(D) if the jury has a reasonable doubt as to the existence of a fact or facts giving rise to the presumption, the presumption fails and the jury shall not consider the presumption for any purpose.
TEX. PENAL CODE ANN § 2.05(a)(2) (Vernon Supp.2008).

giving of an unconstitutional mandatory presumption, relying on *Webber v. State*, 29 S.W.3d 226 (Tex. App.-Houston [14th Dist.] 2000, pet. ref'd) and *Willis v. State*, 790 S.W.2d 307 (Tex.Crim.App.1990). The State does not advance any arguments this omission was not error, but does argue that any possible error did not result in egregious harm.

■■■■■ "Mandatory presumptions are unconstitutional because they relieve the State of the burden of proving every element of the offense beyond a reasonable doubt." *Garrett v. State*, 220 S.W.3d 926, 930 (Tex.Crim.App.2007). However, an instruction pursuant to section 2.05 converts a mandatory presumption into a permissive presumption. *Id.* at 931. A permissive presumption is not unconstitutional because it "allows, but does not require, the trier of fact to infer the elemental fact or ultimate fact from the predicate evidentiary fact or facts." *Id.* at 931, fn. 5 (quoting *Willis*, 790 S.W.2d at 310). In order to specify the procedural consequences of a presumption, and satisfy constitutional strictures, the Legislature enacted penal code section 2.05 and, so long as section 2.05 is adequately incorporated into the court's charge containing a presumption, the presumption will be deemed a permissive one. *Willis*, 790 S.W.2d at 310.

■■■■ In the present case, no instruction pursuant to section 2.05 was contained in the charges given to the jury in these two cases. We therefore agree with appellant that the trial court erred in not including an instruction on the law of presumptions under section 2.05(a)(2). The trial court was mandated to deliver a charge setting forth the law applicable to the case,[19] and a section 2.05(a)(2) instruction was both statutorily and constitutionally required. *See Webber*, 29 S.W.3d at 232–33. However,

we also agree with the State that, under the record in this case, egregious harm is not shown.

■■■■ We consider first the jury charges and arguments of counsel. The charge contains general language that appellant was to be considered innocent until proven guilty and that the State must prove each element of the offenses with which appellant was charged beyond a reasonable doubt. However, such general language does not remedy the harm of a mandatory presumption. *See Webber*, 29 S.W.3d at 232–33 (citing *Francis v. Franklin*, 471 U.S. 307, 319–20, 105 S.Ct. 1965, 1974, 85 L.Ed.2d 344 (1985)).

In closing argument, appellant referred to the general presumption of innocence and argued that he did not intend to harm or defraud anyone. The State argued that the intent to defraud or harm had been shown by the evidence at trial and then read the instruction regarding the presumption to the jury. The State informed the jury that the presumption applied— unless they heard evidence at trial that "would rebut or erase the presumption," which would cause the presumption "to go away." While far from a complete recitation of the required instructions under section 2.05(a)(2), this statement did at least inform the jury that the presumption could, in some circumstances, not apply, and therefore was permissive, rather than mandatory. Thus the State's argument somewhat ameliorated the harm from the omission of a section 2.05(a)(2) instruction.

■■■■ We consider next the state of the evidence, including contested issues and the weight of the probative evidence. The only presumption to which the omitted section 2.05(a)(2) instruction would have applied would be that of penal code section 37.10(g), regarding the element of intent.

---

**19.** Tex.Code Crim Proc. Ann. art. 36.14 (Vernon 2007).

As noted in our review of appellant's sufficiency claims, there was ample circumstantial evidence establishing the element of intent, even without the application of the presumption of section 37.10(g). Appellant did not present any evidence refuting the issue of intent to defraud or harm. The overwhelming weight of the evidence demonstrated that appellant intended to defraud Yarbrough. Where the great weight of evidence supports the facts giving rise to the presumption, egregious harm is not shown. *Neely v. State*, 193 S.W.3d 685, 688 (Tex.App.-Waco 2006, no pet.); *State v. Lewis*, 151 S.W.3d 213, 224 (Tex.App.-Tyler 2004, pet. ref'd); *Webber*, 29 S.W.3d at 237.

Review of the entire record, including the entire charge, the state of the evidence, the arguments of counsel, and any other relevant information, demonstrates that the jury "could not reasonably harbor uncertainty"[20] on the issue of intent. The record does not demonstrate that appellant suffered any "actual, rather than theoretical, harm" from the omission of the instruction, much less does it demonstrate that such error was "so egregious and created such harm that appellant was denied a fair trial." *Warner*, 245 S.W.3d at 461. On the record before us, we conclude that egregious harm was not shown, and we overrule appellant's second point of error.

## Void Punishment

In his third point of error, appellant asserts that the punishment assessed by the jury was void. Appellant argues that the jury was improperly permitted to punish him within a second-degree felony range of punishment when the evidence at trial did not establish the prerequisites necessary for the punishment range to be raised to that of a second-degree felony under Texas Penal Code section 37.10(c)(2).[21]

Appellant was charged with committing an offense under Texas Penal Code section 37.10(a)(2),[22] and the jury was given a punishment charge containing the range of punishment for a second-degree felony. Apart from two exceptions, an offense under penal code section 37.10 is a Class A misdemeanor unless the actor's intent is to defraud or harm another, in which event the offense is a state jail felony. *See* TEX. PENAL CODE ANN. § 37.10(c)(1) (Vernon Supp.2008). However, subsection 2 of section 37.10(c) provides that

> [A]n offense under this section [37.10] is a felony of the third degree if it is shown on the trial of the offense that the governmental record was a public school record, report, or assessment instrument required under Chapter 39, Education Code, or was a license, certificate, permit, seal, title, letter of patent, or similar document issued by government, by another state, or by the United States, unless the actor's intent is to defraud or harm another, in which event the offense is a felony of the second degree.

TEX. PENAL CODE ANN. § 37.10(c)(2).

Appellant asserts that the phrase "issued by government" in section 37.10(c)(2) modifies the term "record, document, or thing" in section 37.10(a)(2), under which he was prosecuted.[23] Appellant argues

---

20. *State v. Lewis*, 151 S.W.3d 213, 224 (Tex. App.-Tyler 2004, pet. ref'd).

21. TEX. PENAL CODE ANN. § 37.10(c)(2).

22. TEX. PENAL CODE ANN. § 37.10(a)(2).

23. Under section 37.10(a)(2), a person commits an offense if he "makes, presents, or uses any record, document, or thing with knowledge of its falsity and with intent that it be taken as a genuine governmental record[.]" TEX. PENAL CODE ANN. § 37.10(a)(2).

that, before he could be punished for a second-degree felony, the State was required to prove that the documents he presented were "certificate[s] ... *issued by government.*" (Emphasis added). Appellant avers that, because the documents he was alleged to have presented were not certificates *issued by government*, but were instead **fraudulent** certificates that were **not** *issued by government*, he could not be punished for a second-degree felony. The State responds that Frey testified that the certificates in question were governmental records issued by the government.

■ The resolution of this issue turns on the construction of section 37.10(c)(2) and, specifically, which term the phrase "issued by the government" is meant to modify. In construing a statute, the reviewing court should first look to the plain language of the statute and seek to effectuate the collective intent or purpose of the legislation. *See Boykin v. State*, 818 S.W.2d 782, 785 (Tex.Crim.App.1991). We therefore turn to the language of the statute and consider its intent and purpose.

Section 37.10(c)(2) provides for increased punishment for offenses involving certain *types* of governmental records whose "tampering with" under section 37.10(a) the legislature has determined merits punishment as a second- or third-degree felony. The phrase "issued by government" in this subsection clearly modifies the term "governmental record" that appears earlier in the same sentence and is part of the description of some of the types of governmental documents listed in the subsection. *See* Tex. Penal Code Ann.

§ 37.10(c)(2) ("the governmental record was ... a license, certificate, permit, seal, title, letter of patent, or similar document issued by government.").

■ In a prosecution under section 37.10(a)(2) therefore, before a person may be punished under section 37.10(c)(2) for a second- or third-degree felony, the State must show that the "genuine governmental record," which the "record, document, or thing" was intended to be taken as, was one of the types of governmental records listed in section 37.10(c)(2)—among which are "certificate[s] ... issued by government." The phrase "issued by the government" in section 37.10(c)(2) may therefore serve as a modifier of the term "genuine governmental record" in section 37.10(a)(2), but has no applicability to the term "record, document, or thing" in section 37.10(a)(2). *See* Tex. Penal Code Ann. § 37.10(a)(2) ("A person commits an offense if he ... makes, presents, or uses ... any record, document, or thing ... with the intent that it be taken as a genuine governmental record.").

This construction of the statute permits a defendant convicted of a violation of section 37.10(a)(2) to be punished for a second- or third-degree felony under section 37.10(c)(2), if the required showings of section 37.10(c)(2) are made, which is consistent with the plain language of section 37.10(c)(2) and its intent and purpose. This construction is also consistent with the language of section 37.10 as a whole, which does not exclude an offense committed under section 37.10(a)(2) from punishment under section 37.10(c)(2).[24] *Cf.* Tex.

---

**24.** Under appellant's construction of the statute, an offense committed under section 37.10(a)(2) could never be punished as more than a state jail felony because a record, document, or thing which is *false* and *intended to be taken as a governmental record* is, by definition, not a governmental record and could not

be "issued by government." Appellant proffers no authorities that would support an argument that the Legislature intended to exclude all offenses committed under section 37.10(a)(2) from second- or third-degree felony punishment under section 37.10(c)(2). Appellant's only cited authority, apart from the

PENAL CODE ANN. § 37.10(d) (Vernon Supp. 2008) (providing specific ranges of punishment for offense involving governmental record described under penal code section 37.01(2)(D)).

In the present case, the State presented evidence at trial, through Frey, that completion certificates issued by the Galveston County Sheriff's Academy (the "genuine governmental records" which the State contended that appellant's fraudulent certificates were intended to be taken as) were issued by the academy and were governmental records.[25] The State also presented evidence establishing that appellant's intent was to harm or defraud another. Accordingly, the required showings of section 37.10(c)(2) were made, and the jury was properly charged with a second-degree range of punishment. We overrule appellant's third point of error.

### Ineffective Assistance of Counsel

■ In his fourth point of error, appellant argues that his defense counsel rendered ineffective assistance by not seeking a jury instruction under section 2.05(a)(2) of the Texas Penal Code or objecting to its omission from the court's charge. Appellant asserts that this failure was "clearly deficient," citing *Vasquez v. State*, 830 S.W.2d 948 (Tex.Crim.App.1992) (per curiam), and contends that if the jury had

been given such an instruction, the jury "could have determined that the State did not meet its burden" to prove appellant's intent to defraud or harm.

To prove ineffective assistance of counsel, an appellant must show that (1) trial counsel's representation fell below an objective standard of reasonableness, based on prevailing professional norms, and (2) there is a reasonable probability that the result of the proceeding would have been different but for trial counsel's deficient performance. *Strickland v. Washington,* 466 U.S. 668, 688–94, 104 S.Ct. 2052, 2064–68, 80 L.Ed.2d 674 (1984). An appellant must prove both prongs of the *Strickland* test, or the contention of ineffective assistance fails. *Rylander v. State,* 101 S.W.3d 107, 110 (Tex.Crim.App.2003).

We have already held that the failure to submit such instruction did not result in egregious harm to appellant. For the same reasons detailed in our discussion of egregious harm, we determine that, even if the failure to request such instruction or object to its omission constituted deficient performance—which question we do not decide—there is not a reasonable probability that, but for such failure, the result of the proceeding would have been different, i.e., appellant would have been acquitted. Appellant has therefore not met his burden under the second prong of *Strickland.*

statute, is *Martinez v. State,* 6 S.W.3d 674 (Tex.App.-Corpus Christi 1999, no pet.); however, *Martinez* is not pertinent to the question presented in this issue. *Martinez* simply holds that an item which is a governmental record by virtue of being required by law to be kept by others for the information of government, is not a governmental record "issued" by government, and so is not the type of governmental record whose "tampering with" is punishable as a second- or third-degree felony under section 37.10(c)(2).

**25.** Moreover, there was testimony from Frey that the documents which appellant presented

appeared to be legitimate completion certificates, except for the dates and appellant's name. Therefore there was evidence at trial that the documents in question were governmental records, specifically certificates issued by government, which had then been altered. Although Frey denied issuing the documents on the dates noted and for the courses noted, she did not testify that the documents had never been issued by the academy. Thus, even under appellant's narrow construction of the statute, the jury was properly charged at punishment.

We overrule appellant's fourth point of error.

## Conclusion

We affirm both judgments of the trial court.