

# NUMBER 13-15-00574-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

**REBECA RENTERIA,** **Appellant,**

**v.**

**THE STATE OF TEXAS,** **Appellee.**

On appeal from the 25th District Court
of Gonzales County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Longoria and Hinojosa**
**Memorandum Opinion by Justice Hinojosa**

Appellant Rebeca Renteria appeals her conviction for injury to a child, a first-degree felony. *See* TEX. PENAL CODE ANN. § 22.04 (West, Westlaw through Ch. 49, 2017 R.S.). A jury found appellant guilty, and the trial court assessed punishment at life imprisonment in the Texas Department of Criminal Justice–Institutional Division. By one

issue, appellant argues she suffered egregious harm from the omission of a general "voluntariness" instruction in the jury charge. We affirm.

## I. BACKGROUND[1]

Appellant brought her two-week old son C.R.[2] to the emergency room in Gonzales, Texas, and informed medical personnel that C.R. would not eat. C.R. appeared limp and lethargic to hospital staff. Doctors later determined that C.R. had suffered extensive brain injury as a result of having been violently shaken. C.R. also suffered a large fracture to the left side of his skull as the result of a high-velocity impact with an unknown object. While C.R. was hospitalized, appellant was questioned separately by Christopher Alonso, a Child Protective Services investigator, and Sergeant Stephen Monsivais, a Gonzales County Sheriff's deputy. Appellant admitted to both Investigator Alonso and Sergeant Monsivais that she shook C.R. vigorously because he would not stop crying.

Appellant filed a motion in limine concerning the voluntariness of her statement to Sergeant Monsivais. The trial court conducted a hearing outside the presence of the jury on appellant's motion and received testimony from Sergeant Monsivais and appellant. Sergeant Monsivais stated that he advised appellant of her *Miranda* rights prior to questioning and that appellant waived her rights and agreed to speak to him.

---

[1] Because this is a memorandum opinion and the parties are familiar with the facts, we will not recite them here except as necessary to advise the parties of the Court's decision and the basic reasons for it. *See* TEX. R. APP. P. 47.4.

[2] We refer to the minor victim by his initials to protect his identity.

2

Appellant testified Sergeant Monsivais did not pressure her to make a statement. However, she claimed that two days before speaking to Sergeant Monsivais, Investigator Alonso told her that "if [she] didn't confess that [she] shook the baby, [appellant's] parents were going to go to jail." Appellant maintained that she would not have given an incriminating statement were it not for Investigator Alonso's alleged threat. After hearing argument from counsel, the trial court explained that Investigator Alonso was not a law enforcement officer and "[was] not subject to the restrictions placed on law enforcement as provided by *Miranda*[.]" The trial court further noted that according to appellant's testimony, "Sergeant Monsivais did not coerce her." For those reasons, the trial court concluded that appellant's statement to Sergeant Monsivais was voluntary.[3] Appellant's video-taped statement was admitted into evidence and played for the jury.[4]

Appellant later testified during the guilt-innocence phase of trial. According to appellant, Investigator Alonso "threaten[ed] me with my parents and my children." Appellant stated that when she arrived at the sheriff's office, she thought they were going to arrest her parents "[b]ecause the CPS person said it." Appellant maintained that she told Sergeant Monsivais she shook C.R. because she was afraid her parents would be arrested. During his testimony, Investigator Alonso denied telling appellant that her parents would go to jail unless she confessed.

---

[3] The trial court later entered written findings of fact and conclusions of law in support of its ruling. Appellant does not appeal the trial court's ruling on the admissibility of her statement.

[4] Prior to the hearing on appellant's motion in limine, Investigator Alonso testified concerning appellant's admission to him that she shook C.R "vigorously."

The trial court held a charge conference, during which appellant failed to request any instruction concerning the voluntariness of her statements. The jury returned a guilty verdict. This appeal followed.

## II. DISCUSSION

By her sole issue, appellant argues she suffered egregious harm from the trial court's failure to include a "general" voluntariness instruction in the jury charge. *See* TEX. CODE CRIM. PROC. ANN. art. 38.22, § 6 (West, Westlaw through Ch. 49, 2017 R.S.). Specifically, appellant maintains that "the evidence presented a fact issue . . . on the voluntariness of appellant's videotaped statements to law enforcement."

### A. Standard of Review and Applicable Law

In analyzing a jury-charge issue, we first determine whether error exists. *See Almanza v. State*, 686 S.W.2d 157, 174 (Tex. Crim. App. 1984) (op. on reh'g); *Tottenham v. State*, 285 S.W.3d 19, 30 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd). If we find error, then we consider whether the error was harmful under the appropriate standard. *Tottenham*, 285 S.W.3d at 30; *see also Warner v. State*, 245 S.W.3d 458, 461 (Tex. Crim. App. 2008) ("The failure to preserve jury-charge error is not a bar to appellate review, but rather it establishes the degree of harm necessary for reversal.").

Appellant did not object to the jury charge, therefore, any potential error in the charge is reviewed only for "egregious harm." *Oursbourn v. State*, 259 S.W.3d 159, 174 (Tex. Crim. App. 2008). This is a difficult standard to meet and requires a showing that the defendant was deprived of a fair and impartial trial. *Nava v. State*, 415 S.W.3d 289, 298 (Tex. Crim. App. 2013). "[T]he error must have affected the very basis of the case,

4

deprived the defendant of a valuable right, or vitally affected a defensive theory." *Id.* In determining whether egregious harm is shown, we look at the entire jury charge, the state of the evidence (including the contested issues and the weight of probative evidence), the arguments of counsel, and any other relevant information revealed by the record of the trial as a whole. *Id.* This analysis is fact specific and is done on a case-by-case basis. *Arrington v. State*, 451 S.W.3d 834, 840 (Tex. Crim. App. 2015).

The trial judge has an absolute sua sponte duty to prepare a jury charge that accurately explains the law applicable to the case. *Oursbourn*, 259 S.W.3d at 179; *see* TEX. CODE CRIM. PROC. ANN. art. 36.14 (West, Westlaw through Ch. 49, 2017 R.S.). Where a rule or statute requires an instruction under the particular circumstances, that instruction is "the law applicable to the case." *Oursbourn*, 259 S.W.3d at 180. Article 38.22, section 6, provides for a general instruction by which the jury is asked to determine whether a defendant's statement was made under voluntary conditions. TEX. CODE CRIM. PROC. ANN. art. 38.22, § 6; *Oursbourn*, 259 S.W.3d at 173. When "a 'question' is raised and litigated as to the 'general' voluntariness of a statement of an accused," a general voluntariness instruction is required.[5] *Oursbourn*, 259 S.W.3d at 180.

---

[5] As noted by the court of criminal appeals,

> Under Texas statutory law, there are three types of instructions that relate to the taking of confessions: (1) a "general" Article 38.22, § 6 voluntariness instruction; (2) a "general" Article 38.22, § 7 warnings instruction (involving warnings given under § 2 and § 3); and (3) a "specific" Article 38.23(a) exclusionary-rule instruction. In essence, the Section 6 "general" instruction asks the jury: "Do you believe, beyond a reasonable doubt, that the defendant's statement was voluntarily made? If it was not, do not consider the defendant's confession."

*Oursbourn v. State*, 259 S.W.3d 159, 173 (Tex. Crim. App. 2008).

5

The court of criminal appeals has noted that the following sequence precipitates a general voluntariness instruction:

> (1) a party notifies the trial judge that there is an issue about the voluntariness of the confession (or the trial judge raises the issue on his own); (2) the trial judge holds a hearing outside the presence of the jury; (3) the trial judge decides whether the confession was voluntary; (4) if the trial judge decides that the confession was voluntary, it will be admitted, and a party may offer evidence before the jury suggesting that the confession was not in fact voluntary; (5) if such evidence is offered before the jury, the trial judge shall give the jury a voluntariness instruction.

*Id.* at 175. A general voluntariness instruction must be given if a reasonable jury, based on the evidence presented at trial, could have found that the statement was not voluntarily made. *Vasquez v. State*, 225 S.W.3d 541, 545 (Tex. Crim. App. 2007). The issue of involuntariness "can be, but need not be, predicated on police overreaching." *Oursbourn*, 259 S.W.3d at 172. Thus, section 6 protects people from police overreaching, threats from private actors, and even themselves. *See id.* at 172–73.

## B. Error Analysis

Appellant argues that the trial court was required to submit a voluntariness instruction to the jury because "[t]he trial evidence showed a disputed fact issue on whether [Investigator Alonso] threatened appellant with the arrest of her parents if she did not tell law enforcement that she harmed [C.R.]" Appellant argues that Investigator Alonso's threat affected the voluntariness of her later statement to Sergeant Monsivais. The State responds that appellant never requested the specific instruction and did not suffer egregious harm from the omission.

At trial, appellant challenged the admissibility of her statement to Sergeant Monsivais. Appellant filed a motion in limine requesting a hearing outside the presence

6

of the jury to determine the voluntariness of appellant's custodial statements. At the hearing, the trial court denied relief, concluding that appellant's statement was voluntarily given. Appellant's video recorded statement was later admitted into evidence. In her testimony before the jury, appellant claimed that Investigator Alonso stated her parents would be arrested if she did not confess. Appellant maintained that Investigator Alonso's alleged threat was the reason she made incriminating statements to Sergeant Monsivais. *See Contreras v. State*, 312 S.W.3d 566, 576 (Tex. Crim. App. 2010) (recognizing that threats against family members can result in an involuntary confession); *Oursbourn*, 259 S.W.3d at 172–73 (noting that article 38.22, section 6 extends to threats from private actors). Because appellant raised and litigated the issue of voluntariness, the instruction became law applicable to the case, and the trial court had an absolute duty to prepare a jury charge that accurately set out the law. *See Oursbourn*, 259 S.W.3d at 176, 179. Therefore, the trial court erred by not including the instruction. *See id.* Having found error, we must determine whether appellant suffered egregious harm. *See id.* at 174.

## C. Harm Analysis

Our egregious harm analysis assesses the impact of the omission of the voluntariness instruction, not the impact of the admission of appellant's statement. *See Ellison v. State*, 86 S.W.3d 226, 228 (Tex. Crim. App. 2002). As previously noted, this inquiry includes reviewing the entire jury charge, the state of the evidence (including the contested issues and the weight of probative evidence), the arguments of counsel, and any other relevant information revealed by the record of the trial as a whole. *Nava*, 415 S.W.3d at 298.

7

### 1. Jury Charge

In reviewing the entirety of the jury charge, we find nothing that either mitigates or reinforces the omission of a general voluntariness instruction.

### 2. State of the Evidence

The voluntariness of appellant's statement to law enforcement was a contested issue at trial. However, the State's case did not rely solely on appellant's statement to Sergeant Monsivais. The State established through extensive and detailed medical testimony that C.R. was shaken violently and that his head was struck by a hard object. Multiple medical professionals testified that C.R.'s injuries were caused by an intentional act of child abuse and could not have been caused by an accident other than a fall from a third story window or a high speed vehicle collision. The combination of injuries resulted in irreversible injury to more than fifty percent of C.R.'s brain. The evidence reflected that, while appellant lived with her parents, she was the only one who cared for C.R. Appellant testified that she was with C.R. at all times during the period he was injured.

Appellant's primary defense was that C.R.'s injuries were not the result of an intentional act but the result of two falls—from a swing and a bed. However, this defensive theory was heavily contradicted by the aforementioned medical testimony. There was also evidence that appellant never reported to hospital staff that C.R. had fallen. When she was initially asked by a treating nurse how C.R. was injured, appellant replied that she did not know.

We further note that appellant's testimony concerning the voluntariness of her statement was rebutted by the admission of a recorded jail conversation between appellant and her father. Appellant's father asked "why are you saying that you dropped him twice—once from here and one from there if that's a lie?" To which appellant responded, "because, how do you call it? Cause—because I had to say that because with that –with that they'll believe me. With that because it's like less for me to have shaken him."

Finally, any article 38.22 instruction would have pertained only to appellant's statement to Sergeant Monsivais and would not have addressed appellant's similar admissions to Investigator Alonso.[6] This factor weighs heavily against a finding of egregious harm.

### 3. Arguments of Counsel

Both the State and appellant's counsel touched on Investigator Alonso's alleged threat in their closing arguments. The State noted that Investigator Alonso denied making any such threats. Appellant's counsel countered that "what [appellant] told

---

[6] Appellant's argument on appeal is limited to the trial court's failure to instruct the jury regarding the voluntariness of her statement to Sergeant Monsivais. Whether the jury should have received an instruction concerning the voluntariness of any other statements is not an issue presented in this appeal. *See* TEX. R. APP. P. 47.1. However, we note that the procedural safeguards of article 38.22 apply only to custodial interrogation by law enforcement officers or their agents. *Hailey v. State*, 413 S.W.3d 457, 479 (Tex. App.—Fort Worth 2012, pet. ref'd) (citing *Berry v. State*, 233 S.W.3d 847, 855 (Tex. Crim. App. 2007); *Wilkerson v. State*, 173 S.W.3d 521, 527 (Tex. Crim. App. 2005)). "For the most part, CPS caseworkers, who are investigating family placement and safety matters, and police officers, who are investigating criminal matters, run on separate parallel paths." *Wilkerson*, 173 S.W.3d at 529. Only when CPS and police are investigating a criminal offense in tandem is compliance with article 38.22 necessary. *Berry*, 233 S.W.3d at 855; *see Harm v. State*, 183 S.W.3d 403, 407 (Tex. Crim. App. 2006) (explaining that the duty to investigate child-abuse claims does not automatically transform CPS case workers into law-enforcement officers); *see also* TEX. CODE CRIM. PROC. ANN. art. 38.22, § 5 ("Nothing in this article precludes the admission . . . of a statement that does not stem from custodial interrogation[.]"). There is no evidence that, at the time Investigator Alonso questioned appellant, he was working in tandem with law enforcement. *See Berry*, 233 S.W.3d at 855; *Harm*, 183 S.W.3d at 407.

[Sergeant] Monsivais was what the CPS investigator told her that she did." He further argued that "what you heard here today from [appellant] was the truth." The relative veracity of appellant's trial testimony—including her assertion that her custodial statement was the result of a threat—and appellant's earlier admission that she shook C.R. was an issue that was squarely presented to the jury for consideration. This factor weighs against a finding of egregious harm.

### 4. Summary

Having considered the entirety of the jury charge, the evidence, including the contested issues and weight of the probative evidence, the arguments of counsel, and other relevant information revealed by the trial record as a whole, we conclude that the omission of the voluntariness instruction did not deprive appellant of a valuable right or vitally affect a defensive theory. *See Nava*, 415 S.W.3d at 298. Therefore, appellant did not suffer egregious harm. We overrule appellant's sole issue.

### III. CONCLUSION

We affirm the trial court's judgment.

LETICIA HINOJOSA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
3rd day of August, 2017.

10