ACCEPTED
05-14-01370-CR
FIFTH COURT OF APPEALS
DALLAS, TEXAS
6/24/2015 8:22:23 AM
LISA MATZ
CLERK

**NO. 05-14-01370-CR**

FILED IN
5th COURT OF APPEALS
DALLAS, TEXAS
6/24/2015 8:22:23 AM
LISA MATZ
Clerk

**IN THE COURT OF APPEALS
FOR THE FIFTH DISTRICT OF TEXAS
AT DALLAS, TEXAS**

---

**ANDRE TODD WATSON,**
**Appellant**

**v.**

**THE STATE OF TEXAS,**
**Appellee**

---

*On appeal from Criminal District Court Number Four*
*Dallas County, Texas*
*Cause Number F13-62530-K*

---

**STATE'S BRIEF**

---

SUSAN HAWK
*CRIMINAL DISTRICT ATTORNEY*
DALLAS COUNTY, TEXAS

*Counsel of Record:*
KIMBERLY J. DUNCAN
*ASSISTANT DISTRICT ATTORNEY*
STATE BAR NO. 24051190
FRANK CROWLEY COURTS BLDG.
133 N. RIVERFRONT BLVD., LB-19
MARISA ELMORE
*ASSISTANT DISTRICT ATTORNEY*
DALLAS COUNTY, TEXAS
DALLAS, TEXAS 75207-4399
(214) 653-3629/(214) 653-3643 (FAX)
Kimberly.Duncan@dallascounty.org

*ATTORNEYS FOR THE STATE OF TEXAS*

# TABLE OF CONTENTS

INDEX OF AUTHORITIES ................................................................................ ii

STATEMENT OF THE CASE ..............................................................................1

STATEMENT OF FACTS ....................................................................................1

SUMMARY OF ARGUMENT .............................................................................7

ARGUMENT .......................................................................................................8

*Response to Appellant's Issue:  The trial court properly denied Appellant's request for a jury instruction under article 38.23 of the Texas Code of Criminal Procedure* ...........................................................................................................8

   *A. Standard of Review* .................................................................................8

   *B. Applicable Law* .......................................................................................9

   *C. Application of Law to Facts* ....................................................................11

*State's Cross-Point: The judgment should be modified to accurately reflect Appellant's plea of not guilty* ..........................................................................17

   *A. Applicable Law* .......................................................................................17

   *B. Application of Law to Facts* ....................................................................18

PRAYER ..............................................................................................................19

CERTIFICATE OF COMPLIANCE .....................................................................19

CERTIFICATE OF SERVICE ..............................................................................19

# INDEX OF AUTHORITIES

**Cases**

*Abron v. State*,
   997 S.W.2d 281 (Tex. App.—Dallas 1998, pet. ref'd) ........................................18

*Almanza v. State*,
   686 S.W.2d 157 (Tex. Crim. App. 1985) (op. on reh'g).......................................8

*Asberry v. State*,
   813 S.W.2d 526 (Tex. App.—Dallas 1991, pet. ref'd) ........................................18

*Bigley v. State*,
   865 S.W.2d 26 (Tex. Crim. App. 1993) ...............................................................17

*Correa v. State*,
   No. 05-12-01197-CR, 2014 Tex. App. LEXIS 4792 (Tex. App.—Dallas May 2,
   2014, no pet.) (mem. op., not designated for publication) ...................................16

*Grubbs v. State*,
   440 S.W.3d 130 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd) .... 13, 14, 16

*Holmes v. State*,
   223 S.W.3d 728 (Tex. App.—Houston [14th Dist.] 2007), *aff'd*, 248 S.W.3d 194
   (Tex. Crim. App. 2008) .......................................................................................13

*Madden v. State*,
   242 S.W.3d 504 (Tex. Crim. App. 2007) ............................................ 9, 10, 14, 17

*Mbugua v. State*,
   312 S.W.3d 657 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd)....................17

*Nolan v. State*,
   39 S.W.3d 697 (Tex. App.—Houston [1st Dist.] 2001, no pet.).........................18

*Robinson v. State*,
   377 S.W.3d 712 (Tex. Crim. App. 2012) ............................................................10

*Spence v. State*,
   325 S.W.3d 646 (Tex. Crim. App. 2010) ............................................................16

*Tottenham v. State*,
   285 S.W.3d 19 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd)......................8

*Vogel v. State*,
  No. 05-11-01669-CR, 2014 Tex. App. LEXIS 13327 (Tex. App.—Dallas Dec. 11, 2014, no pet.) (mem. op. on remand, not designated for publication) .... 14, 15

*Warner v. State*,
  245 S.W.3d 458 (Tex. Crim. App. 2008) ...............................................................8

**Statutes**

Tex. Code Crim. Proc. Ann. art. 14.01 (West 2005) ...............................................15

Tex. Code Crim. Proc. Ann. art. 36.14 (West 2007) .................................................9

Tex. Code Crim. Proc. Ann. art. 38.23 (West 2005) .................................................9

Tex. Penal Code Ann. § 22.01 (West Supp. 2014) ....................................................1

Tex. Penal Code Ann. § 22.02 (West 2011) ..............................................................1

**Rule**

Tex. R. App. P. 43.2 .................................................................................................17

**TO THE HONORABLE COURT OF APPEALS:**

The State of Texas respectfully submits this brief in response to the brief of Appellant, Andre Todd Watson.

## STATEMENT OF THE CASE

Appellant pled not guilty to an indictment for aggravated assault with a deadly weapon. (CR: 11, 127, 139; RR 2: 5; RR 3: 13). *See* Tex. Penal Code Ann. § 22.01 (West Supp. 2014), § 22.02 (West 2011). A Dallas County jury convicted Appellant of the offense as alleged in the indictment. (CR: 139, 145; RR 4: 53). Appellant initially pled not true to two enhancement paragraphs alleging prior convictions, but after the punishment phase began, the parties entered into an agreement regarding sentencing. (CR: 141-44; RR 4: 54; RR 5: 4-5). Thereafter, Appellant pled true to the enhancement paragraphs, and the trial court accepted his pleas of true and sentenced him to twenty-five years' confinement in the Texas Department of Criminal Justice in accordance with the agreement. (CR: 141-45; RR 5: 4-5). The trial court overruled Appellant's motion for new trial. (CR: 151). Appellant filed a timely notice of appeal. (CR: 152).

## STATEMENT OF FACTS

In June of 2009, James Cousins left his life of drug and alcohol use in Atlanta, Georgia, and found his way to Dallas, Texas, to start a new life. (RR 3: 15). Cousins initially stayed at The Bridge, a homeless shelter in downtown Dallas. (RR 3: 16).

Through a program at The Bridge, he obtained work with a company called Lifenet; he eventually became a full-time Lifenet employee and got his own place to live. (RR 3: 16-17).

On November 15, 2013, Cousins was working for Lifenet, cleaning The Bridge. (RR 3: 17-18). He clocked out at 7:30 p.m. for his hour-long lunch break and walked to a 7-Eleven convenience store located about three blocks from The Bridge. (RR 3: 17-18). When he arrived, he filled his cup with soda and also purchased an éclair and two bananas. (RR 3: 18-19). He heard two men arguing in a nearby parking lot when he exited the store. (RR 3: 19). He avoided the men and walked to the corner to wait for the light to change. (RR 3: 19). After crossing Harwood Street, he again waited for the light to change to cross Jackson Street. (RR 3: 20). At that time, he saw one of the two men, later identified as Appellant, "standing at the opposite corner." (RR 3: 20). Cousins started to cross Jackson Street when the light changed, but Appellant came up behind him and struck him in the face twice before pulling out a red-handled razor knife, grabbing Cousins's shirt, and slashing at him. (RR 3: 20-21, 25). Appellant sliced Cousins's shirt three times. (RR 3: 21). He said, "You hear me now." (RR 3: 21). Cousins and the other man involved in the earlier argument with Appellant told Appellant to let go of Cousins. (RR 3: 21). Eventually, Appellant released Cousins and went back across the street. (RR 3: 21).

Cousins kept an eye on Appellant while trying to call 911. (RR 3: 21). He saw Appellant enter the 7-Eleven. (RR 3: 27). As Cousins reached the corner, he learned that a safety patrol officer was in the immediate vicinity. (RR 3: 21). When he saw the safety patrol officer, Cousins said, "[T]hat's the gentleman that just attacked me," as Appellant exited the 7-Eleven. (RR 3: 21, 27). The safety patrol officer crossed the street to approach Appellant, but Appellant did not stop. (RR 3: 31, 39). Another safety patrol officer arrived on a bicycle and followed Appellant. (RR 3: 40). At that point, Cousins lost sight of Appellant and the safety patrol officer; he stayed where he was until Dallas Police (DPD) officers arrived at the parking lot across from the 7-Eleven. (RR 3: 41). He told the officers what happened. (RR 3: 41). Soon, another DPD patrol car arrived with Appellant in the backseat. (RR 3: 41). Cousins identified Appellant as the person who attacked him. (RR 3: 41). After officers photographed his facial injuries and his shirt, Cousins returned to work at The Bridge. (RR 3: 41-42).

At trial, Cousins identified Appellant as the man who attacked him; he explained that Appellant was "looking more healthier" at the time of trial than he did at the time of the attack. (RR 3: 24). Cousins also testified that it hurt when Appellant punched him in the face and that he was scared when Appellant pulled the knife on him because he thought Appellant was trying to inflict injury on him. (RR 3: 32). In addition to Cousins, the safety patrol officers and two DPD officers testified for the State.

3

Tony Creswell testified he had been a security officer with Downtown Safety Patrol for five years and also had previous experience in security work. (RR 3: 70). He explained that the Downtown Safety Patrol was "sort of like the security force for the Central Business District" and served as "an extra set of eyes and ears for the police department." (RR 3: 71). Creswell explained that, although much of their training came from DPD officers, the Downtown Safety Patrol officers were not certified peace officers. (RR 3: 71).

Creswell testified about his involvement in this case. On November 15, 2013, he was getting off the bus near Main Street Gardens when he learned that an assault had taken place. (RR 3: 72-73). After he was alerted that Appellant was the suspect, he approached Appellant and said, "What's up, man?" (RR 3: 74). Appellant did not respond, so Creswell followed him, which he explained was something he was trained to do. (RR 3: 75). Creswell also radioed for back-up on his two-way radio. (RR 3: 75). Suddenly, Appellant turned around in the middle of Harwood Street, pulled out a red-handled box cutter, and "flipped" open the blade. (RR 3: 75-76). When Appellant started walking toward him with the open box cutter, Creswell pulled out his "OC spray," a police-grade mace, and sprayed a short burst of spray in Appellant's face. (RR 3: 77). Appellant wiped his face and walked away. (RR 3: 78).

4

Meanwhile, Creswell's backup, Larry Jimerson, arrived on his bicycle. (RR 3: 78, 105). Jimerson, who had several years' experience as a security guard, saw Appellant put his hand up toward Creswell "in an aggressive manner" before Creswell administered the OC spray. (RR 3: 105-09). Jimerson also saw a box cutter or knife in Appellant's hand at the time; he thought Appellant was trying to cut Creswell. (RR 3: 109-10). Jimerson followed Appellant a short distance and asked him to "stop, please stop, stop." (RR 3: 109). Before Jimerson reached Appellant, Appellant threw his knife across Wood Street. (RR 3: 78, 109-10). Jimerson then dismounted his bicycle and took Appellant to the ground. (RR 3: 78, 110-12). Very soon thereafter, DPD officers arrived at the scene and placed Appellant under arrest. (RR 3: 113).

DPD Officer Donald Dean was on patrol with his partner, Officer Joshua Vogel, when they received a dispatch regarding the incident. (RR 3: 125, 152). They responded to the scene where Officer Dean spoke to Cousins. (RR 3: 126, 152-53). While Officer Dean spoke to Cousins, a security officer with the Downtown Safety Patrol rode by on his bicycle, saying, "Hey, we've got the suspect to this incident about a block away. My guys are down there." (RR 3: 127, 153). Officer Dean stayed with Cousins while Officer Vogel jumped into Officer Bill Martinez's patrol car to follow the safety patrol officer. (RR 3: 127, 129, 153). When Officers Vogel and Martinez arrived, Jimerson had the highly-agitated Appellant on the ground. (RR 3: 155).

5

Officer Vogel handcuffed Appellant for officer safety. (RR 3: 155). After Jimerson told him Appellant had tossed the knife used in this incident, Officer Vogel retrieved the knife from the road and collected it as evidence. (RR 3: 156-57). Dallas Fire and Rescue responded to the scene to make sure Appellant was medically clear after being sprayed with mace; thereafter, Officer Vogel transported Appellant back to the original offense location and then to jail. (RR 3: 158). A subsequent police effort to obtain video surveillance footage from any area cameras was unsuccessful. (RR 3: 130-31, 158).

At the conclusion of the State's case-in-chief, Appellant's counsel requested a directed verdict. (RR 4: 8-9). The trial court denied the motion as well as Appellant's request for a jury instruction under article 38.23 of the Texas Code of Criminal Procedure. (RR 4: 9-12, 15). Thereafter, Appellant presented the testimony of Donald Wojan, a licensed private investigator, who had obtained Appellant's clothing, visited the scene of the offense and surrounding area, and unsuccessfully attempted to obtain surveillance video from the area. (RR 4: 16-30). After hearing the jury charge and arguments of the parties, the jury found Appellant guilty of aggravated assault with a deadly weapon as alleged in the indictment. (CR: 139, 145; RR 4: 53).

When the punishment phase began, Appellant initially pled not true to two enhancement paragraphs alleging prior felony convictions, but when the proceeding resumed the next day, the parties entered into an agreement regarding sentencing. (CR: 141-44; RR 4: 54; RR 5: 4-5). Pursuant to the agreement, Appellant pled true to the enhancement paragraphs, and the trial court accepted his pleas of true and sentenced him to twenty-five years' confinement in the Texas Department of Criminal Justice. (CR: 141-45; RR 5: 4-5).

## SUMMARY OF ARGUMENT

A defendant is entitled to an instruction under article 38.23 of the Texas Code of Criminal Procedure if there are disputed factual issues that are material to his claim of a constitutional violation that would render evidence inadmissible. In the absence of a disputed factual issue, the legality of the conduct is determined by the trial court alone. Because there were no contested factual issues as required for an article 38.23 instruction, the trial court did not abuse its discretion in denying Appellant's request for such an instruction. Accordingly, Appellant's sole issue on appeal should be decided against him. Furthermore, because the record clearly reflects that Appellant pled not guilty to the charged offense, the State respectfully requests that the judgment be modified to accurately reflect Appellant's plea. The judgment of the trial court should be affirmed as modified.

## ARGUMENT

***Response to Appellant's Issue: The trial court properly denied Appellant's request for a jury instruction under article 38.23 of the Texas Code of Criminal Procedure.***

The record does not reflect any disputed factual issues material to Appellant's claim of a constitutional violation that would render evidence inadmissible. Accordingly, the trial court properly denied Appellant's request, and this Honorable Court should decide Appellant's sole issue against him.

### A. Standard of Review

In analyzing a jury-charge issue, the reviewing court must first determine if error exists. *See Almanza v. State*, 686 S.W.2d 157, 174 (Tex. Crim. App. 1985) (op. on reh'g); *Tottenham v. State*, 285 S.W.3d 19, 30 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd). If the court finds error, the court should then consider whether an objection to the charge was made and analyze for harm. *Tottenham*, 285 S.W.3d at 30; *see also Warner v. State*, 245 S.W.3d 458, 461 (Tex. Crim. App. 2008). Error properly preserved by a timely objection to the charge will require reversal "as long as the error is not harmless." *Almanza*, 686 S.W.2d at 171. When the error is not preserved, reversal is appropriate only if the error is so egregious and created such harm that it denied the defendant a fair and impartial trial. *See id.*

*B. Applicable Law*

The trial judge must "distinctly set[] forth the law applicable to the case" in the jury charge. Tex. Code Crim. Proc. Ann. art. 36.14 (West 2007). In proper cases, the "law applicable to the case" will include an instruction under article 38.23 of the Texas Code of Criminal Procedure, which prohibits the admission of illegally-obtained evidence. Article 38.23 requires that, in any case where a fact issue is raised whether evidence was obtained in violation of the constitution or laws of the United States or the State of Texas, "the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained." Tex. Code Crim. Proc. Ann. art. 38.23(a) (West 2005). The terms of article 38.23 are mandatory, and when an issue of fact is raised, a defendant has a statutory right to have the jury charged accordingly. *Madden v. State*, 242 S.W.3d 504, 510 (Tex. Crim. App. 2007).

A defendant's right to the submission of a jury instruction under article 38.23 is, however, "limited to disputed issues of fact that are material to his claim of a constitutional or statutory violation that would render evidence inadmissible." *Id*. A defendant must meet three requirements before he is entitled to the submission of a jury instruction under article 38.23: (1) the evidence heard by the jury must raise an issue of fact; (2) the evidence on that fact must be affirmatively contested; and (3) that contested

factual issue must be material to the lawfulness of the challenged conduct in obtaining the evidence. *Id.*

Under the first requirement, there must be a genuine dispute about a material issue of fact before an article 38.23 instruction is warranted; if there is no disputed fact issue, the legality of the conduct is determined by the court alone, as a matter of law. *Id.* "Evidence to justify an article 38.23(a) instruction can derive 'from any source,' no matter whether 'strong, weak, contradicted, unimpeached, or unbelievable.'" *Robinson v. State*, 377 S.W.3d 712, 719 (Tex. Crim. App. 2012). But there must be "affirmative evidence" that puts the existence of the material fact into question. *Madden*, 242 S.W.3d at 513. Evidence that only calls into question or discredits the evidence supporting the fact is not sufficient. *Cf. id.* at 516 (videotape could only constitute evidence of disputed fact if it "clearly showed" the defendant did not do something the officer said he did and the video "clearly" would have shown that conduct if it had occurred). There must be a "conflict in the evidence" regarding the disputed fact. *See id.* at 513. Furthermore, if other facts, not in dispute, are sufficient to support the lawfulness of the challenged conduct, then the disputed fact issue is not material to the ultimate admissibility of the evidence and is not to be submitted to the jury. *See id.* at 516. The disputed fact issue must be essential to deciding the lawfulness of the challenged conduct. *Id.* at 511.

## C. Application of Law to Facts

Appellant's counsel requested an article 38.23 instruction at trial, arguing as follows:

> I do believe there's been several instances in this case when improper illegal actions have been taken on the part of the Safety Patrol Officers. I know that I was concerned about asking for this initially because they were not state actors. I do think they were acting in conjunction with the police, and believed they were the whole time, but I think this is clear that any person that obtains evidence illegally that is then relied upon and tried to be admitted in court – and I do believe the investigation was not done – I mean, we haven't seen any evidence that it was done by any kind of protocol, any kind of constitutional safeguards that dictate what the police do in their investigation. I don't believe any of that was followed in the Safety Patrol investigation.
>
> I also believe the detention of [Appellant] at the scene was done in an unlawful manner by the Safety Patrol, based on hearsay, based on possible uncontroverted statements by passerby. You know, I think it's – well, nothing is clear after the testimony, but I do think it's clear, nobody really witnessed this except the complaining witness, and he didn't even properly identify [Appellant].
>
> I also believe that the police spoke to the fact that they would have done an entirely different protocol as far as identifying [Appellant] at the scene, had they believed that either the complaining witness had lost track of the attacker at some point, which they didn't know at the time, which has come out in testimony. The complaining witness says, yeah, he went into 7-Eleven, I don't know, for several minutes.

11

> They said they would have also followed a different procedure had they thought that the Safety Patrol had not witnessed the whole thing. They thought officer – they thought security officer Jimerson witnessed the actual attack. I mean, they show up and put a rubber stamp on it, which you know, they knew the guy, they trusted him. That's fine, but Officer Jimerson was not even the first guy on the scene, he definitely didn't witness the original attack on Mr. Cousins.
>
> So, I think that actually directly implicates the Fourth Amendment because those are police officers, I think, stating that, you know, had they known these things that we actually know, they would have done it differently. So, it is – it is suppressible at that point. And I think that the jury has a right to consider the way we got here, because I do think after the testimony and all the inconsistencies, they should be allowed to consider that.

(RR 4: 11-12). After taking time to consider Appellant's request for an article 38.23 instruction, the trial court denied his request. (RR 4: 12, 15).

Appellant argues the trial court's denial of his request constituted reversible error. He cites case law pertaining to lawful arrests by non-police officials as well as the law regarding abandonment of property. App. Br. at 18-19. Ultimately, Appellant argues that "the evidence adduced at trial raised the issue of whether the knife that the State entered as exhibit 20 was illegally obtained and therefore the trial court erred in not issuing the requested charge under article 38.23." App. Br. at 24. Appellant has not, however, identified a genuine issue of material fact to warrant an article 38.23 instruction.

12

Unlike *Holmes v. State*, which Appellant relies on in support on his argument, the record in this case does not raise a fact issue regarding the legality of the seizure of any evidence. App. Br. at 17-18, 26. *See Holmes v. State*, 223 S.W.3d 728, 730-31 (Tex. App.—Houston [14th Dist.] 2007), *aff'd*, 248 S.W.3d 194 (Tex. Crim. App. 2008). In *Holmes*, the intermediate court of appeals concluded that the trial court erred in refusing the defendant's request for an article 38.23 instruction, finding the defendant had raised a fact issue about the legality of cocaine found in a crack pipe in Holmes's pocket after officers detained him. *Id*. Holmes testified, and his testimony conflicted with the arresting officers' account of the events leading up to his arrest. *Id*. This case does not present such a dispute regarding any issue of material fact.

Rather, this case is similar to *Grubbs v. State*, in which the appellate court concluded the trial court did not err in omitting an article 38.23 instruction from the jury charge. *See Grubbs v. State*, 440 S.W.3d 130, 137-39 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd). Grubbs argued that a fact issue was raised at his trial whether the arresting officers had reasonable suspicion to stop him or probable cause to detain him; he claimed that by "'consistently challeng[ing] each witness regarding the lack of reasonable suspicion to stop him or the probable cause to arrest him,'" he raised a factual dispute. *Id*. at 138. The reviewing court, however, concluded "the implication raised by Grubbs's questioning does not, by itself, raise a disputed fact issue." *Id*.

13

Importantly, the court explained, "A cross-examiner's questions do not create a conflict in the evidence, although the witnesses' answers might." *Id.* (citing *Madden*, 242 S.W.3d at 513). Thus, the court found no conflict in the evidence that raised a disputed fact issue material to the legal question of reasonable suspicion to detain Grubbs because the undisputed testimony was that Grubbs initially flagged down the officer who arrested him. *Grubbs*, 440 S.W.3d at 138.

Similarly, in *Vogel v. State*, this Honorable Court rejected the defendant's claim that he was entitled to an article 38.23 instruction. *See Vogel v. State*, No. 05-11-01669-CR, 2014 Tex. App. LEXIS 13327 (Tex. App.—Dallas Dec. 11, 2014, no pet.) (mem. op. on remand, not designated for publication). Vogel, who was stopped because one of his headlights was out, was ultimately arrested for DWI after the officer who stopped him smelled alcohol emanating from the car and on Vogel's breath. *Id.* at *2. Vogel testified at trial that he had consumed only two alcoholic drinks the night of his arrest; he testified that "he did not 'think' Officer Coffie would have been able to smell alcohol on his breath at the time of the stop and that he would be 'surprised' if Coffie smelled alcohol on him at that time." *Id.* Vogel claimed on appeal that there was an "issue of fact" as to whether the facts upon which Coffie relied to detain Vogel — the smell of alcohol and Vogel's admission that he may have had a single drink — sufficed to show reasonable suspicion. *Id.* at *4.

Significantly, this Court concluded that whether the facts amounted to reasonable suspicion was a question of law, not a question of fact for the jury to determine. *Id*. Furthermore, Vogel was not entitled to an instruction under article 38.23 because the evidence did not raise a fact issue whether the arresting officer smelled alcohol on him: Vogel's testimony that he did not "think" the officer could have smelled alcohol on his breath and that he would have been "surprised" if he smelled of alcohol was not "affirmative evidence" he did not smell of alcohol. *Id*. at *4-5.

Likewise, the evidence in this case did not present an issue of disputed fact entitling Appellant to an article 38.23 instruction. Appellant claims the evidence "shows that Jimerson illegally pursued and detained [him], which precipitated the involuntary abandonment of the knife," and "includes a version of events in which Jimerson wrongly detained him." App. Br. at 26. His argument is not supported by the record. No testimony contradicted Jimerson's testimony that he saw Appellant put his hand up toward Creswell "in an aggressive manner" before Creswell administered the OC spray, and that Jimerson saw a box cutter or knife in Appellant's hand at the time, which he thought Appellant was trying to use to cut Creswell. (RR 3: 105-10).[1]

---

[1] Notably, "[a] peace officer or any other person, may, without a warrant, arrest an offender when the offense is committed in his presence or within his view, if the offense is one classed as a felony or as an offense against the public peace." Tex. Code Crim. Proc. Ann. art. 14.01(a) (West 2005).

15

At that point, Jimerson followed Appellant a short distance and asked him to "stop, please stop, stop." (RR 3: 109). Before Jimerson reached Appellant, Appellant threw his knife across Wood Street. (RR 3: 78, 109-10). Jimerson then dismounted his bicycle and took Appellant to the ground. (RR 3: 78, 110-12). Very soon thereafter, DPD officers arrived at the scene, placed Appellant under arrest, and collected the knife. (RR 3: 113, 156-57).

Appellant has not identified a factual issue regarding the detention or the legality of the seizure of the knife that would have been appropriate for the jury's consideration. The question of whether Jimerson legally detained Appellant was an issue of law. *See, e.g., Spence v. State*, 325 S.W.3d 646, 653-54 (Tex. Crim. App. 2010) (concluding that proper placement of a license plate was an issue of law not fact, and factual dispute about where car was parked was not material); *Grubbs*, 440 S.W.3d at 138 (finding no conflict in the evidence that raised a disputed fact issue material to the legal question of reasonable suspicion to detain Grubbs because the undisputed testimony presented at trial by all three officers was that Grubbs initially flagged down the officer who arrested him); *Correa v. State*, No. 05-12-01197-CR, 2014 Tex. App. LEXIS 4792, at *5 (Tex. App.—Dallas May 2, 2014, no pet.) (mem. op., not designated for publication) (overruling the defendant's point of error because he proffered no evidence that operator did not remain in Correa's presence for fifteen

16

minutes); *Mbugua v. State*, 312 S.W.3d 657, 669 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd) (finding no error in jury charge because there was no conflict in the evidence raising a disputed fact that would have mandated a 38.23 jury instruction); *Shpikula v. State*, 68 S.W.3d 212, 217 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd) (explaining that the jury's right to disbelieve officers' testimony did not create a factual dispute requiring a jury instruction under article 38.23).

Appellant has not directed this Court to—and the record does not contain—any affirmative evidence of a factual dispute that would have entitled Appellant to an instruction under article 38.23. *See Madden*, 242 S.W.3d at 513. Accordingly, the trial court properly instructed the jury. Appellant's sole issue should be decided against him.

### State's Cross-Point: The judgment should be modified to accurately reflect Appellant's plea of not guilty.

The judgment states that Appellant pled nolo contendere to the indictment in this case, but the record clearly reflects that he pled not guilty. The judgment should be modified to accurately reflect Appellant's not-guilty plea.

### A. Applicable Law

Where the record contains the necessary information to do so, the court on appeal has the authority to modify incorrect judgments. Tex. R. App. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27 (Tex. Crim. App. 1993); *Abron v. State*, 997

17

S.W.2d 281, 282 (Tex. App.—Dallas 1998, pet. ref'd). "An appellate court has the power to correct and reform a trial court judgment 'to make the record speak the truth when it has the necessary data and information to do so, or make any appropriate order as the law and nature of the case may require.'" *Nolan v. State*, 39 S.W.3d 697, 698 (Tex. App.—Houston [1st Dist.] 2001, no pet.) (quoting *Asberry v. State*, 813 S.W.2d 526, 529 (Tex. App.—Dallas 1991, pet. ref'd)).

## B. Application of Law to Facts

At trial, Appellant entered a plea of not guilty both outside the presence of the jury and when arraigned in the presence of the jury. (RR 2: 5; RR 3: 13). The written judgment, however, incorrectly states Appellant's plea to the offense was "NOLO CONTENDERE." (CR: 145). Because this Honorable Court has the necessary information to modify the judgment, the State respectfully requests that the judgment be modified to accurately reflect Appellant's plea of not guilty in this case.

## PRAYER

The State prays this Honorable Court will affirm the judgment of the trial court as modified.

Respectfully submitted,

_Kimberly J. Duncan_

Susan Hawk
Criminal District Attorney
Dallas County, Texas

Kimberly J. Duncan
Assistant District Attorney
Frank Crowley Courts Building
133 N. Riverfront Blvd., LB19
Dallas, Texas 75207-4399
(214) 653-3629/(214) 653-3643 (FAX)
Kimberly.Duncan@dallascounty.org

## CERTIFICATE OF COMPLIANCE

I hereby certify that of the foregoing brief, inclusive of all contents, is 5,046 words in length, according to Microsoft Word, which was used to prepare the brief, and that the foregoing brief complies with the word-count limit and typeface conventions required by the Texas Rules of Appellate Procedure.

_Kimberly J. Duncan_
KIMBERLY J. DUNCAN
Assistant District Attorney

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing brief has been served on the Honorable Niles Illich, Counsel for Appellant, via electronic service on June 24, 2015.

_Kimberly J. Duncan_
KIMBERLY J. DUNCAN
Assistant District Attorney

19