

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

---

No. 08-25-00087-CR

---

Joseph Jerome Davila, Appellant

v.

The State of Texas, Appellee

---

On Appeal from the 109th District Court
Andrews County, Texas
Trial Court No. 8516

---

## MEMORANDUM OPINION

In two issues, Appellant Joseph Jerome Davila appeals his convictions for attempt to commit sexual assault and evading arrest or detention with a vehicle. We affirm.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Amanda Gonzales, the complainant, testified that on March 3, 2024, she attended an event where she briefly saw her cousin, Appellant Joseph Jerome Davila. Later that night, Davila went

to Gonzales's home, where the two sat at her kitchen table and drank beer. Gonzales testified that she went to use the restroom and that before she finished, Davila pushed the door open and refused to leave. She stated that the two began fighting and that Davila forced her into her bedroom, began removing her clothes, pulled his pants down, and covered her mouth, while repeatedly telling her "you're going to take this." One of Gonzales's sons heard her screaming, ran to her room, pulled Davila off her, and threw him out of the house and called 911. Davila left the house in his truck.

Officer Ryan Taylor testified that dispatch sent him to investigate a possible sexual assault and provided him with the suspect's address and a description of a gray truck. As Taylor approached the residence, he saw a white truck parked outside. Taylor dispatched a nearby officer for assistance then saw the white truck leave the residence and began to follow it. As Taylor followed behind, and as the other officer he had dispatched approached, the driver of the truck braked and made a U-turn. Taylor found this behavior suspicious and activated his lights and sirens, but the truck did not stop. Eventually the truck came to a stop after a couple of miles. Davila was the driver of the truck; officers conducted a felony stop and arrested him.

Officer Brycen White testified that he responded to Gonzales's house on the night of the alleged offense. White testified that Gonzales was "very upset" when he arrived. Gonzales identified Davila as her assailant and stated he was her cousin. Detective Rayme Madison, who also responded that night, testified that Gonzales was upset when she arrived and had identified Davila as her assailant. Gonzales gave Madison a detailed account of the incident and walked her through the restroom and bedroom, explaining what had occurred throughout the incident. Madison testified that Gonzales reported that Davila entered the restroom while she was using it, pushed her into her bedroom, forced her against the dresser while taking off her clothes and telling her "you're going to take this," forced her onto the bed, and that his pants and underwear were

both down as she continued to fight and scream until her son intervened and kicked Davila out of the house.

Davila was charged with one count of evading arrest or detention with a vehicle and one count of attempted sexual assault. After a three-day jury trial, the jury found Davila guilty of third-degree attempted sexual assault and sentenced him to five years, and guilty of third-degree evading arrest or detention with a vehicle and sentenced him to two years, with the sentences to run concurrently. Tex. Penal Code §§ 15.01, 38.04(b)(2)(A). This appeal followed.

## II. STANDARD OF REVIEW

In reviewing the legal sufficiency of the evidence to support a criminal conviction, we view all the evidence in the light most favorable to the verdict to determine whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007); *see also Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (holding *Jackson* legal-sufficiency standard "is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt"). This standard applies whether the evidence is direct or circumstantial. *Hooper*, 214 S.W.3d at 13.

We defer to the factfinder to resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Hooper*, 214 S.W.3d at 13. In reviewing the sufficiency of the evidence, we examine the events occurring before, during, and after the commission of the alleged offense, and may rely on actions which show the accused's understanding and common design to do the prohibited act. *Id*. "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Id*. As a reviewing court, we

3

may not resolve any conflicts of fact or assign credibility to the witnesses. *Id*. Instead, "we test the evidence to see if it is at least conclusive enough for a reasonable factfinder to believe based on the evidence that the element is established beyond a reasonable doubt." *Blankenship v. State*, 780 S.W.2d 198, 207 (Tex. Crim. App. 1988) (en banc). (citing *Jackson*, 443 U.S. at 318).

A reviewing court reviews alleged jury-charge error to determine: (1) whether the jury charge was erroneous; and (2) whether the record shows that error resulted in harm, applying the appropriate harm analysis, which is determined by whether the error was preserved for appeal. *Jackson v. State*, No. 05-15-00414-CR, 2016 WL 4010067, at \*8 (Tex. App.—Dallas July 22, 2016, no pet.) (mem. op.) (citing *Cortez v. State*, 469 S.W.3d 593, 598 (Tex. Crim. App. 2015), *Tolbert v. State*, 306 S.W.3d 776, 779 (Tex. Crim. App. 2010)). If a reviewing court concludes that the jury charge was not erroneous, it need not conduct a harm analysis. *See Cortez*, 469 S.W.3d at 598.

## III. ANALYSIS

### A. Count 1 – Evading arrest or detention with a vehicle

In his first issue, Davila appeals his third-degree conviction of evading arrest with a vehicle. A person commits the third-degree felony offense of evading arrest if he: (1) intentionally; (2) flees; (3) from a person; (4) he knows is a peace officer or federal special investigator; (5) attempting to lawfully arrest or detain him; and (6) the actor uses a vehicle while in flight. *Jackson*, 2016 WL 4010067, at \*7; Tex. Penal Code § 38.04(b)(2)(A).

Davila challenges his conviction of evading arrest or detention with a vehicle on the basis that the offense is only a third-degree felony offense when there is proof of a prior conviction for evading arrest or detention and that, because the jury charge did not include a prior conviction of

the offense as an element, the State failed to meet its burden of proof.[1] Davila relies on *Calton v. State*, a 2005 Texas Court of Criminal Appeals decision, to argue that Texas Penal Code § 38.04 requires proof of a previous conviction of evading arrest or detention for a third-degree evading arrest. 176 S.W.3d 231, 234 (Tex. Crim. App. 2005) (en banc) ("The plain language of §38.04 reveals that a prior conviction for evading arrest is an element of the offense of third-degree evading arrest. It therefore must be proved at the guilt phase of the trial."). However, this Court, and intermediate appellate courts across Texas, have addressed this issue and have consistently concluded that the State may prove the offense as a third-degree felony when the defendant uses a vehicle during flight, regardless of previous convictions.

As we explained in *Rodriguez v. State*, the Legislature passed three bills amending § 38.04 during the 2011 legislative session that resulted in two different punishment schemes codified in § 38.04. No. 08-18-00053-CR, 2019 WL 3283314, at *2 (Tex. App.—El Paso July 22, 2019) (not designated for publication); *see* Act of May 23, 2011, 82nd Leg., R.S., ch. 391, § 1, 2011 Tex. Gen. Laws 1046, 1046-47 (current version at Tex. Penal Code. § 38.04(b)(1), (2)) (Senate Bill 496); Act of May 24, 2011, 82nd Leg., R.S., ch. 839, § 4, 2011 Tex. Gen. Laws 2110, 2111 (current version at Tex. Penal Code. § 38.04(b)(1), (2)) (House Bill 3423); Act of May 27, 2011, 82nd Leg., R.S., ch. 920, § 3, 2011 Tex. Gen. Laws 2321, 2322 (current version at Tex. Penal Code. § 38.04(b)(1), (2)) (Senate Bill 1416). These two punishment schemes took effect on September 1, 2011. One portion of § 38.04 classifies the offense as a third-degree felony where the actor uses a motor vehicle or watercraft to flee law enforcement and has been previously convicted under § 38.04. *See* Tex. Penal Code § 38.04(b)(1)(B). Another portion of the statute makes evading arrest

---

[1] Davila concedes that he did not object to the jury charge in the trial court, "[h]owever, we will review all alleged jury-charge error . . . regardless of preservation in the trial court." *Floyd v. State*, 714 S.W.3d 9, 12 (Tex. Crim. App. 2024), reh'g denied (Jan. 22, 2025) (internal quotations omitted).

or detention a third-degree felony when the actor uses a vehicle during flight, regardless of any prior conviction for the offense. *See id.* § 38.04(b)(2)(A).

Evading arrest or detention is a third-degree felony when the defendant uses a vehicle during flight, regardless of prior convictions, and other appellate courts have concluded the same. *See e.g.*, *Adetomiwa v. State*, 421 S.W.3d 922, 924 (Tex. App.—Fort Worth 2014, no pet.), *Warfield v. State*, No. 03-15-00468-CR, 2017 WL 2628563, at *11 (Tex. App.—Austin June 14, 2017, pet. ref'd) (mem. op., not designated for publication); *Jackson v. State*, No. 05-15-00414-CR, 2016 WL 4010067, at *7 n.1 (Tex. App.—Dallas July 22, 2016, no pet.) (mem. op., not designated for publication); *Moorhead v. State*, 483 S.W.3d 246, 248 (Tex. App.—Texarkana 2016, no pet.); *Salazar v. State*, 474 S.W.3d 832, 837–39 (Tex. App.—Corpus Christi 2015, no pet.); *Mims v. State*, 434 S.W.3d 265, 269–70 (Tex. App.—Houston [1st Dist.] 2014, no pet.); *State v. Sneed*, No. 09-14-00232-CR, 2014 WL 4755502, at *3–4 (Tex. App.—Beaumont September 24, 2014, pet. ref'd) (mem. op., not designated for publication); *Thompson v. State*, No. 12-13-00264-CR, 2014 WL 3662239, at *1–2 (Tex. App.—Tyler July 23, 2014, no pet.) (mem. op., not designated for publication); *Wise v. State*, No. 11-13-00005-CR, 2014 WL 2810097, at *4–5 (Tex. App.—Eastland June 19, 2014, pet. ref'd) (mem. op., not designated for publication); *Scott v. State*, No. 10-13-00159-CR, 2014 WL 1271756, at *2–3 (Tex. App.—Waco March 27, 2014, no pet.) (mem. op., not designated for publication); *Peterson v. State*, No. 07-13-00155-CR, 2014 WL 546048, at *1–2 (Tex. App.—Amarillo February 10, 2014, pet. ref'd) (mem. op., not designated for publication) (per curiam).

The record shows that Davila was charged with evading arrest or detention with a motor vehicle. The indictment specifically alleged that Davila:

> Did then and there intentionally flee from Ryan Taylor, a person the defendant knew was a peace officer who was attempting to lawfully arrest or detain the defendant, and the defendant used a motor vehicle while in flight.

6

At trial, the jury charge instructed the jury as follows:

> You must determine whether the state has proved, beyond a reasonable doubt, six elements. The elements are-
>
> 1. The Defendant, Joseph Jerome Davila, in Andrews County, Texas, on or about March 3, 2024, intentionally fled from Ryan Taylor, a peace officer;
> 2. The Defendant fled while Ryan Taylor was attempting to arrest or detain the defendant;
> 3. The Defendant knew Ryan Taylor was a peace officer;
> 4. The Defendant knew Ryan Taylor was attempting to arrest or detain the Defendant;
> 5. The attempted arrest or detention was lawful; and
> 6. The Defendant used a vehicle while in flight.
>
> You must all agree on the six elements listed above.

The State did not allege that Davila had been previously convicted for the offense and instead sought punishment under the statutory scheme that does not require proof of a prior conviction, and the jury was instructed in accordance with that statutory scheme—subsection 38.04(b)(2)(A). The judgment reflects that Davila was convicted under subsection 38.04(b)(2)(A), which makes the offense a third-degree felony when the actor uses a vehicle during flight, regardless of a prior conviction for evading arrest or detention. *See Mangiafico*, 2023 WL 4861783, at \*2 ("When the accused uses a motor vehicle in his flight—as the jury concluded Mangiafico did here—the offense is a third degree felony, regardless of whether the accused has a prior conviction for evading arrest or detention."); *Rodriguez*, 2019 WL 3283314, at \*3 ("We agree with our sister courts that the offense of evading arrest or detention is a third-degree felony when the defendant uses a vehicle in the flight, irrespective of previous convictions."); *Adetomiwa*, 421 S.W.3d at 925–26 ("[I]f the person uses a vehicle in flight and if the person has not been previously convicted under section 38.04, the offense of evading arrest is a state jail felony under one of the amended versions of section 38.04 (specifically, subsection (b)(1)(B)), but the offense is a third degree felony under the other amended version of section 38.04 (specifically, subsection (b)(2)(A))."). The State was not required to prove that Davila had been previously convicted of evading arrest or detention, and the

trial court did not err by not including a prior conviction as an element of the offense in the jury charge.[2] Issue One is overruled.

### B. Count 2–Attempted sexual assault

In his second issue, Davila challenges the legal sufficiency of his conviction for attempted sexual assault.

A person commits sexual assault when he intentionally or knowingly causes the penetration of another person's anus or sexual organ by any means without that person's consent; causes the penetration of another person's mouth by the actor's sexual organ without consent; or causes another person's sexual organ, without consent, to contact or penetrate the mouth, anus, or sexual organ of another person, including the actor. Tex. Penal Code § 22.011(a)(1)(A)–(C). There is no consent when the actor compels the other person to submit or participate by using physical force or violence. *Id*. § 22.011(b)(1). A person commits attempted sexual assault if, with the intent to commit sexual assault, "he does an act amounting to more than mere preparation that tends, but fails, to effect the commission" of sexual assault. *Id*. § 15.01(a).

Davila contends the evidence is legally insufficient because there was no evidence that he made "attempts to touch Gonzales's private parts" or that Gonzales suffered any physical injury. Evidence that an actor attempted to "touch private parts" or that the complainant suffered physical injury is not required to prove attempted sexual assault. To establish an attempted offense, the actor need not complete every act short of its actual commission. *Hackbarth v. State*, 617 S.W.2d 944, 946 (Tex. Crim. App. [Panel Op.] 1981). Rather, the relevant inquiry is whether Gonzales intended to commit sexual assault and took steps toward that goal.

A person acts intentionally with respect to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result. Tex. Penal Code § 6.03(a). A

---

[2] Davila does not challenge any other element of the alleged offense for which he was convicted in Count 1.

person acts knowingly with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result. *Id*. § 6.03(b). Direct evidence of the requisite culpable mental state is not required and is almost always proven through circumstantial evidence. *Hart v. State*, 89 S.W.3d 61, 64 (Tex. Crim. App. 2002) (en banc); *Tottenham v. State*, 285 S.W.3d 19, 28 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd) ("[B]oth intent and knowledge may be inferred from circumstantial evidence and proof of a culpable mental state almost invariably depends on circumstantial evidence."). A factfinder may infer intent through circumstantial evidence such as the acts, words, and conduct of a defendant. *Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004). A jury may also infer that a defendant intended the natural consequences of his acts. *See Ruffin v. State*, 270 S.W.3d 586, 591–92 (Tex. Crim. App. 2008).

> The indictment alleged that Davila:

> Did then and there, with the specific intent to commit the offense of Sexual Assault to Amanda Gonzalez, do an act, namely force Amanda Gonzalez onto a bed while his genitals were exposed, which amounted to more than mere preparation that tended but failed to effect the commission of the offense intended.

Davila focuses on the testimony of Gonzales and her son to argue that the State failed to prove attempted sexual assault because the indictment alleged that he forced Gonzales onto the bed while his genitals were exposed and "the testimony at trial contradicts this." This argument, however, is without merit. As the State argues, it was the jury's role to resolve conflicts in the evidence, as the jury is the sole judge of credibility and weight to be given to the evidence presented at trial. *Young v. State*, 358 S.W.3d 790, 801 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd). The testimony at trial reasonably supports the jury's determination that Davila committed the acts alleged in the indictment.

Madison, who responded to the scene and questioned Gonzales after the assault, testified about what Gonzales reported on the night of the offense. Madison testified that Gonzales was "disheveled and very upset" when she arrived. Gonzales was "crying and in a state of hysteria" as

she described what happened. Madison testified that Davila first made contact with Gonzales in the restroom, pushed her against the dresser in her bedroom, began pulling her pants down while telling her "you're going to take this you're going to take this," then took down his underwear and moved her to the bed. Gonzales reported that the offense occurred in various parts of the room and that Gonzales reported that Davila's pants and underwear were down as he stated, "you're going to take this." As Gonzales continued to fight and scream for help, her son entered the room and pulled Davila off her.

Gonzales testified that before the offense, she left her kitchen table where she and Davila were talking to use the restroom. She walked into the restroom, which connects to her bedroom. Gonzales stated that before she had finished, Davila pushed the restroom door open and she told him to get out. Davila refused and told her that she did not "want to give it up" and was "going to take this." Gonzales testified that Davila pushed her into the bedroom, that she began fighting with him, and that he told her she was "going to take it" as he pinned her against the dresser, pushed her onto her bed, and covered her mouth. She described that she screamed, repeatedly told him to stop, and testified that she "just remember[s] tussling" with him: and "having [her] clothes being taken off." The jury also heard that the assault occurred more than a year before trial and Gonzales's testimony that she was nervous, could not recall certain details, and had a better memory on the night of the assault. She stated the incident "happened so fast" and that she believed Davila was going to rape her, which is what she screamed to her son when he intervened.

Davila's son, Espinosa, also testified that he woke up to Gonzales screaming, ran to her room, saw Davila on Gonzales near the dresser with his pants down. Espinosa testified that Gonzales's dress was halfway down her body, and she was saying that Davila was "trying to rape her." Espinosa testified that Davila pulled his pants up and stated that nothing had happened when he entered the room and that Davila's underwear were not down.

Gonzales testified that she remembered Davila's pants were down but could not recall whether his underwear were on or precisely where the offense occurred; Espinosa testified that Davila's underwear were not down; the jury heard inconsistent testimony and was free to credit that evidence. The jury heard Madison's detailed testimony recounting Gonzales's statements on the night of the offense. Madison testified that Gonzales walked her through the bathroom and bedroom and explained that the offense began in the restroom and continued into the bedroom. Madison testified that on the night of the offense, Gonzales reported that "Davila began to push up on her and move her to the bedroom . . . pushed her against the dresser, started taking down her underwear and pants saying 'you're going to take this you're going to take this' . . . [s]he pushed him off and started to scream, tried to fight him off and defend herself. She advised me that she was moved to the bed[.] Davila's pants and underwear were down. She . . . continued to put up a fight and scream. Davila had covered her mouth[.] Madison testified multiple times that Gonzales reported the assault occurred on the dresser and then moved to the bed and that Gonzales reported Davila's underwear were down. Madison also testified that Gonzales's account remained consistent throughout the investigation.

The trial testimony reasonably supports the jury's determination that Davila committed the acts alleged in the indictment. The jury was free to disbelieve any or all of the evidence and weigh the evidence as it saw fit. *Young*, 358 S.W.3d at 801. We defer to the jury's role to fairly resolve conflicts in the evidence, and we draw all reasonable inferences from the evidence in favor of the verdict. *See Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). It is not the province of this Court to resolve conflicts of fact or assign credibility to witnesses; rather, the trier of fact is the sole judge of the credibility of the witnesses and the weight of the evidence. *Rubio v. State*, No. 08-00-00341-CR, 2002 WL 125732, at *3 (Tex. App.—El Paso January 31, 2002, no pet.) (citing *Bonham v. State*, 680 S.W.2d 815, 819 (Tex. Crim. App. 1984), cert. denied, 474 U.S. 865,

11

(1985)). Viewing all the evidence in the light most favorable to the verdict, as we are required to do, we conclude the evidence was legally sufficient for a rational jury to find, beyond a reasonable doubt, that Davila took steps amounting to more than mere preparation that tended but ultimately failed to effect the commission of sexual assault against Gonzales. Issue Two is overruled.

### III. CONCLUSION

We affirm.

MARIA SALAS MENDOZA, Chief Justice

May 12, 2026

Before Salas Mendoza, C.J., Palafox and Soto, JJ.

(Do Not Publish)

12